67 F.3d 300
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Steven B. McKINNON, Petitioner-Appellant,
v.
STATE OF OHIO, Respondent-Appellee.
 No. 94-4256.
 United States Court of Appeals, Sixth Circuit.
 Sept. 27, 1995.
 
 Before: MILBURN and NELSON, Circuit Judges; and MORTON,* District Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Petitioner Steven B. McKinnon appeals the district court's judgment denying his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. On appeal, the issues are (1) whether the district court erred in finding that petitioner was barred from presenting his first, third, and fourth claims for federal habeas corpus review due to his procedural default in the state court, (2) whether the district court erred in concluding that petitioner was not denied a fair trial by the prosecutor's reference to petitioner's overnight consultation with his attorney, (3) whether the district court erred in concluding that there was constitutionally sufficient evidence to support petitioner's conviction of gross abuse of a corpse, (4) whether the district court erred in concluding that petitioner was not denied effective assistance of counsel at trial, (5) whether the district court erred in failing to consider whether the cumulative effect of the errors alleged by petitioner denied him a fair trial, and (6) whether the district court erred in not conducting an evidentiary hearing. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On the evening of July 17, 1990, petitioner Steven B. McKinnon and his wife, Beth A. McKinnon, had a heated argument in their apartment. The couple, who were having domestic problems, were fighting about Beth's whereabouts the prior evening and Beth's desire to obtain a divorce. The argument ended when petitioner stabbed his wife in her chest and in her back, causing her death. When petitioner realized that Beth was dead, petitioner wrote a suicide note,[1] which was found in a trash can in the kitchen. Petitioner then purchased two and a half gallons of gasoline which he spread throughout the apartment, including the area around Beth's body. The gasoline in the apartment was ignited. Petitioner argued that the vapors from the fuel spread to the kitchen and were ignited by the pilot light on the gas stove. As the fire spread in the apartment, petitioner went onto the second floor balcony of the apartment. Police and paramedics found petitioner on the ground below the balcony. Petitioner had two fractured wrists, facial lacerations, and was bleeding from the back of his head. He testified that he could not remember how or why he came to be on the ground. Petitioner was taken to the hospital for treatment of his injuries.
 
 
 3
 Between 2:00 and 2:30 a.m. the next day, Detective Caplinger of the Chillicothe Police Department interviewed petitioner at the hospital. Petitioner initially requested an attorney before making his statement but later decided to proceed with the interview until he felt that he needed an attorney. As the interview proceeded, petitioner requested an attorney, and the interview terminated. Petitioner presented the contents of the interview in his defense at trial.
 
 B.
 
 4
 On July 27, 1990, a Ross County, Ohio grand jury indicted petitioner on one count of murder for purposely causing the death of his wife, Beth A. McKinnon, one count of aggravated arson for knowingly causing harm to an occupied structure by means of fire or explosion, and one count of gross abuse of a corpse for treating a human corpse in a manner that would outrage the reasonable sensibilities of the community. Petitioner pled not guilty, and a trial ensued. At trial, petitioner was represented by attorney Carl Hirsch. The trial court denied defense motions for individual voir dire of prospective jury members on the issue of media exposure and for a change of venue. A jury found petitioner guilty of all counts, and on November 15, 1990, petitioner was sentenced to a term of 15 years to life incarceration for murder, a consecutive term of five to 25 years incarceration for aggravated arson, and a concurrent term of one and one-half years incarceration for gross abuse of a corpse.
 
 
 5
 On October 15, 1991, petitioner, who was represented by new counsel, appealed his judgment of conviction to the Court of Appeals for the Fourth District of Ohio, where he raised the following assignments of error:
 
 
 6
 1. In a murder trial where all but one of the prospective jurors acknowledged that they had been exposed to pretrial publicity, appellant was deprived of his right to an impartial jury pursuant to Article I, Section 10 of the Ohio Constitution, as the result of the trial court's denial of defense counsel's request for limited individual voir dire on the prospective jurors' exposure to pretrial publicity.
 
 
 7
 2. It was plain error for the prosecutor to cross-examine appellant and comment on rebuttal of closing argument concerning appellant's overnight trial consultations with his attorney.
 
 
 8
 3. It was error for the prosecutor to cross-examine appellant and comment on rebuttal of closing argument concerning appellant's exercise of his right to remain silent at the time of interrogation.
 
 
 9
 4. The trial court erred by not instructing on the offense of criminal damaging, in violation of O.R.C. Sec. 2909.06, a lesser included offense of aggravated arson, when the defendant testified that he spread gasoline throughout his apartment but did not light the gasoline on fire and when the defendant's testimony was corroborated by an expert witness.
 
 
 10
 5. The trial court erred by not instructing on the offense of attempted aggravated arson, in violation of O.R.C. Sec. 2923.02, a lesser included offense of aggravated arson, or on the offense of arson, a lesser included offense of aggravated arson, in violation of O.R.C. Sec. 2909.03, when the defendant testified that he engaged in conduct which, if successful would result in aggravated arson, but that he did not actually complete the offense of aggravated arson.
 
 
 11
 6. There is insufficient evidence in the record to sustain a verdict of guilty on the charge of abuse of a corpse.
 
 
 12
 7. The multiple counts statute, O.R.C. Sec. 2941.25, prohibits sentencing on both the aggravated arson conviction and the abuse of a corpse conviction.
 
 
 13
 8. Appellant was deprived of his constitutional right to effective assistance of counsel, as provided by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution....
 
 
 14
 J.A. 127-28. On June 10, 1992, the Ohio Court of Appeals overruled all assignments of error and affirmed petitioner's judgment of conviction. State v. McKinnon, No. 90-CA-1744 (Ohio Ct.App. June 10, 1992).
 
 
 15
 Represented by the same appellate counsel, petitioner sought leave to appeal to the Supreme Court of Ohio on July 27, 1992. Petitioner asserted that the trial court erred as to the following propositions of law:
 
 
 16
 1. A prosecutor may not suggest that a defendant's decision to confer with counsel during the course of a trial should be equated with guilt.
 
 
 17
 2. A prosecutor may not suggest that a defendant's exercise of his constitutional right to remain silent should be equated with guilt.
 
 
 18
 3. An attorney ineffectively assists a client when he requests jury instructions on a lesser included offense which is not appropriate under existing law and waives his client's right to a lesser included offense which is proper and justified by the evidence.
 
 
 19
 4. An attorney ineffectively assists a client when he fails to object to a prosecutor's improper cross-examination of a defendant concerning his consultation with counsel.
 
 
 20
 5. An attorney ineffectively assists a client when he fails to object to a prosecutor's improper rebuttal concerning a defendant's conferences with counsel.
 
 
 21
 6. An attorney ineffectively assists a client when he fails to object to a prosecutor's improper rebuttal concerning a defendant's assertion of his Miranda rights.
 
 
 22
 7. When justified by the evidence, criminal damaging is a lesser included offense of aggravated arson.
 
 
 23
 8. When justified by the evidence, arson and attempted aggravated arson are lesser included offenses of aggravated arson.
 
 
 24
 9. When justified by the evidence, the multiple counts statute prohibits sentencing on both aggravated arson and abuse of a corpse.
 
 
 25
 J.A. 304-07. On October 21, 1992, the Ohio Supreme Court overruled petitioner's motion for leave to appeal and sua sponte dismissed the action for lack of a substantial constitutional question. State v. McKinnon, No. 92-1482 (Ohio Oct. 21, 1992).
 
 
 26
 On April 19, 1994, petitioner, again represented by the same counsel, filed a petition for a writ of habeas corpus in the district court pursuant to 28 U.S.C. Sec. 2254. In his petition, petitioner raised the following grounds for relief:
 
 
 27
 1. Petitioner was denied the right to a fair trial and impartial jury.
 
 
 28
 2. Petitioner was denied a fair trial when the prosecutor improperly questioned petitioner and made improper remarks regarding petitioner's overnight consultations with his attorney.
 
 
 29
 3. The prosecutor committed prosecutorial misconduct and denied petitioner a fair trial when the prosecutor referred to defense counsel as "a person who condones little white lies."
 
 
 30
 4. Insufficient evidence to support a conviction of aggravated arson.
 
 
 31
 5. Insufficient evidence to support a conviction of gross abuse of a corpse.
 
 
 32
 6. Petitioner was denied the right to effective assistance of counsel.
 
 
 33
 (1) Petitioner's trial counsel was ineffective when he failed to move to suppress his client's inculpatory statements on the grounds of involuntariness and Miranda and then proceeded to play the inculpatory and incriminatory tape recording of the defendant during his case-in-chief.
 
 
 34
 (2) Failed to object to the prosecutor's improper comments on voir dire examination wherein the prosecutor characterized the deceased as a "victim" and the case as "one of a series of a senseless murders that have happened in our community."
 
 
 35
 (3) Failed to object to the prosecutor's reference to petitioner at trial as "Mr. Defendant."
 
 
 36
 (4) Failed to object to the prosecutor's improper cross-examination of the petitioner regarding his overnight consultation with his attorney.
 
 
 37
 (5) Failed to object to the prosecutor's improper rebuttal concerning the defendant's overnight conference with his attorney, ridiculing petitioner for exercising his rights at the time of his initial interrogation and failed to object to the prosecutor's reference to defense counsel as "someone who condones little white lies."
 
 
 38
 (6) Failed to provide proper notice to the prosecutor regarding an experiment which supported the petitioner's theory of the cause of the fire, furnished the petitioner's experiment in an inadmissible manner and relied on an expert witness who did not investigate the scene of the fire.
 
 
 39
 (7) Referred to his client during closing argument as "conceptually the aggressor" in a self-defense case.
 
 
 40
 (8) Referred to his client's actions in pouring gasoline in the apartment as "a perverse thing to do" when the charges are aggravated arson and abuse of a corpse.
 
 
 41
 (9) Referred to the death of Beth McKinnon as a homicide.
 
 
 42
 (10) Requested the court not to instruct on involuntary manslaughter when the defendant testified that the death was unintentional, and by requesting a charge on negligent homicide which was clearly inappropriate under Ohio law.
 
 
 43
 J.A. 438-40. On October 24, 1994, the district court denied petitioner's petition for a writ of habeas corpus. The district court found that petitioner's first, third, and fourth claims were procedurally barred from habeas review and that petitioner's second, fifth, and sixth claims were without merit. Petitioner filed a notice of appeal on November 22, 1994, and the district court granted a certificate of probable cause to appeal on February 22, 1995.
 
 II.
 
 44
 "State prisoners ... may file a 28 U.S.C. Sec. 2254 petition for writ of habeas corpus to challenge the constitutionality of their state court convictions, after exhausting all available state court remedies." Clemmons v. Sowders, 34 F.3d 352, 354 (6th Cir.1994) (citing 28 U.S.C. Sec. 2254(a)-(c)). We review a district court's refusal to grant a habeas petition de novo. Id; Carter v. Sowders, 5 F.3d 975, 978 (6th Cir.1993), cert. denied, 114 S.Ct. 1867 (1994). However, "[w]e review the factual findings of the district court under a clearly erroneous standard, and give complete deference to state court findings unless they are clearly erroneous." Levine v. Torvik, 986 F.2d 1506, 1512 (6th Cir.) (citations omitted), cert. denied, 113 S.Ct. 3001 (1993). To obtain habeas corpus relief, a petitioner must establish " 'actual prejudice' " resulting from a constitutional error. Clemmons, 34 F.3d at 354 (quoting Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993)). Moreover, "a constitutional error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.' " Id. (quoting Brecht, 113 S.Ct. at 1722).
 
 A.
 
 45
 Petitioner argues that the district court erred in finding that his procedural default in the state court barred him from presenting for habeas corpus review his first claim that he was denied his right to a fair trial and an impartial jury due to pretrial and trial publicity; his third claim that the prosecutor's statement in his rebuttal closing argument that defense counsel "condones little white lies" constituted prosecutorial misconduct; and his fourth claim that there was insufficient evidence to support his conviction for aggravated arson. Normally, a district court may not grant a writ of habeas corpus to a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State...." 28 U.S.C. Sec. 2254(b); Picard v. Connor, 404 U.S. 270, 275-76 (1971); Riggins v. McMackin, 935 F.2d 790, 793 (6th Cir.1991). As a general rule, a state prisoner who is procedurally barred from presenting his federal constitutional claim in state court when he applies for federal relief due to his failure to raise the claim in state court in a timely manner is also barred from federal habeas relief. Engle v. Isaac, 456 U.S. 107, 128-29 (1982) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)); see State v. Perry, 226 N.E.2d 104 (Ohio 1967) (holding that a party is precluded from raising a claim that he failed to raise during the course of his direct appeal).
 
 
 46
 However, the Supreme Court has recognized two narrow exceptions to the procedural default bar. First, a federal district court may excuse a procedural default if the petitioner demonstrates cause for not raising his federal constitutional claim in state court and actual prejudice from the alleged constitutional violation. Wainwright, 433 U.S. at 87. Second, a federal court may excuse a procedural default if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986); Rust v. Zent, 17 F.3d 155, 162 (6th Cir.1994).
 
 
 47
 In this case, petitioner asserts only that the district court erred in finding that he was barred from presenting his first, third, and fourth claims for federal habeas review due to his procedural default in the state courts because he is actually innocent of the crimes of which he was convicted. Petitioner does not challenge the district court's finding that he procedurally defaulted on these claims nor does he show cause for his procedural default. The Supreme Court explained the standard for determining actual innocence in Kuhlmann v. Wilson, 477 U.S. 436 (1986), wherein the Court stated:
 
 
 48
 [T]he prisoner must "show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonble doubt of his guilt."
 
 
 49
 Id. at 454 n. 17 (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142, 160 (1970)). The Court elaborated that "the 'ends of justice' require federal courts to entertain [successive petitions for federal habeas relief from a state conviction] only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." Kuhlmann, 477 U.S. at 454. The inquiry must focus on actual or factual innocence, as opposed to legal innocence. See Ewing v. McMackin, 799 F.2d 1143, 1152 (6th Cir.1986). In Sawyer v. Whitley, 112 S.Ct. 2514 (1992), the Supreme Court explained that "[a] prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime. ... For example, ... another person has credibly confessed to the crime, and it is evident that the law has made a mistake." Id. at 2519-20. The Tenth Circuit has explained that "[f]actual innocence must mean at least sufficient claims and facts that--had the jury considered them--probably would have convinced the jury that the defendant was factually innocent." Parks v. Reynolds, 958 F.2d 989, 995 (10th Cir.), cert. denied, 503 U.S. 928 (1992).
 
 
 50
 Petitioner asserts that he is "actually innocent" of murder, aggravated arson, and gross abuse of a corpse. In this regard, petitioner argues that insufficient evidence supported his convictions of murder, aggravated arson, and gross abuse of a corpse. Petitioner raises on appeal the same arguments that he presented to the jury before it determined petitioner's guilt. These arguments did not persuade the jury that petitioner was actually innocent of the charges in the indictment, and petitioner has provided no additional reasons why we should "reach back into ... the sacrosanct arena of the jury's guilt or innocence determination." Parks, 958 F.2d at 995. Moreover, ample evidence supported petitioner's convictions. Evidence was presented that petitioner stabbed his wife in the back and in the chest causing her death, that he wrote a suicide note claiming responsibility for her death, that he left the apartment to purchase two and one-half gallons of gasoline, which he spread around the apartment including the area around his wife's body, and that a fire subsequently was started. Accordingly, we hold that the district court did not err in finding that petitioner was procedurally barred from seeking federal habeas review of his first, third, and fourth claims of error.
 
 B.
 
 51
 Petitioner argues that the district court erred in concluding that petitioner was not denied a fair trial by the prosecutor's reference to petitioner's overnight consulation with his attorney on the evening before petitioner testified.[2] "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.' " Serra v. Michigan Dep't of Corrections, 4 F.3d 1348, 1355 (6th Cir.1993) (quoting Smith v. Phillips, 455 U.S. 209, 219 (1982)), cert. denied, 114 S.Ct. 1317 (1994). This court has recognized "that prosecutors must enjoy considerable latitude in presenting arguments to a jury, and that reversal of a conviction should not be ordered when a prosecutor's behavior, even though inappropriate, has not resulted in prejudicial error." Sizemore v. Fletcher, 921 F.2d 667, 670 (6th Cir.1990). "On habeas review, our role is to determine whether the conduct was 'so egregious so as to render the entire trial fundamentally unfair.' " Serra, 4 F.3d at 1355 (quoting Cook v. Bordenkircher, 602 F.2d 117, 119 (6th Cir.), cert. denied, 444 U.S. 936 (1979)). In Angel v. Overberg, 682 F.2d 605 (6th Cir.1982) (en banc), we identified the factors we are to consider in weighing the extent of prosecutorial misconduct in habeas cases as follows:
 
 
 52
 In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidently placed before the jury, and the strength of the competent proof to establish the guilt of the accused.
 
 
 53
 Id. at 608 (citing United States v. Leon, 534 F.2d 667, 679 (6th Cir.1976)). This determination must be made on a case-by-case basis, examining "the totality of the circumstances." Id. The Supreme Court has further explained that a federal court reviewing a habeas applicant's assertion of prosecutorial misconduct must determine whether the prosecutorial misconduct had a "substantial and injurious effect or influence" upon the jury's verdict. Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993).
 
 
 54
 In this case, petitioner asserts that he was denied a fundamentally fair trial by the prosecutor's reference to his overnight consultation with his attorney during petitioner's cross-examination and during the prosecutor's rebuttal portion of his closing argument. The relevant portions of petitioner's cross-examination are as follows:
 
 
 55
 Q. Sir, did you meet with anybody last night to prepare your story for today?
 
 
 56
 A. Not to prepare for it, we talked about it.
 
 
 57
 Q. Pardon?
 
 
 58
 A. I had talked to my lawyer last night.
 
 
 59
 Q. For about how long?
 
 
 60
 A. About forty-five minutes.
 
 
 61
 Q. Now, the jail records indicate about an hour and a quarter. Would that--is that possible?
 
 
 62
 A. It's possible.
 
 
 63
 Q. And when you say you talked to a lawyer, you talked to Mr. Hirsch last night?
 
 
 64
 A. Yes.
 
 
 65
 Q. To prepare for today?
 
 
 66
 A. Yes.
 
 
 67
 Q. Now, you've been present for the entire trial, right?
 
 
 68
 A. Yes.
 
 
 69
 Q. And you've seen each of the exhibits that the State produced into evidence?
 
 
 70
 A. Yes.
 
 
 71
 Q. And Mr. Hirsch went over each of those with you, did he not?
 
 
 72
 A. Except for the ones in the back.
 
 
 73
 * * *
 
 
 74
 * * *
 
 
 75
 Q. But everything else you've had an opportunity to look at?
 
 
 76
 A. Yes.
 
 
 77
 Q. And you've heard all the testimony from all the witnesses?
 
 
 78
 A. Yes.
 
 
 79
 Q. And last night you and your attorney got together?
 
 
 80
 A. Yes.
 
 
 81
 J.A. 560-62. In the rebuttal portion of the prosecutor's closing argument, the prosecutor stated:
 
 
 82
 Let's consider the consistency of the Defendant's story yesterday with what he told Detective Caplinger initially. You have the tape. You heard the tape. He had no details. He said in response to questions I don't know, I don't' remember, I blacked out. Now, amazingly yesterday, the Defendant came in here and told you the details of the stabbing. Admittedly, he told it by the use of leading questions, but you did get the details for the first time yesterday. The timing of that story is significant. It was only at the end of the entire trial did the Defendant tell his story. After we had the fingerprint evidence, the blood evidence, the medical evidence, the handwriting evidence, and the testimony of all the witnesses, only then did the Defendant tell his story, and then again only after he met with his attorney prior to his testimony.
 
 
 83
 J.A. 638-39. The district court found that the prosecutor's remarks were improper under our decision in Sizemore v. Fletcher, 921 F.2d 667 (6th Cir.1990), in which we granted a writ of habeas corpus where the prosecutor's repeated remarks about the petitioner's wealth and the petitioner's consultation with his attorneys prejudiced the petitioner. However, the district court found that while the prosecutor's remarks were "both ill-advised and improper, [they] did not deprive [petitioner] of a fundamentally fair trial." J.A. 476.
 
 
 84
 Applying the factors set forth in Angel, we note that the prosecutor's remarks were not extensive or pervasive. Moreover, as discussed above, there was abundant evidence of petitioner's guilt. Therefore, we conclude that even assuming that the prosecutor's remarks were improper, they did not have a "substantial and injurious effect or influence" upon the jury's verdict. Brecht, 113 S.Ct. at 1722. Accordingly, we hold that the district court did not err in concluding that petitioner was not denied a fair trial by the prosecutor's reference to petitioner's overnight consultation with his attorney.
 
 C.
 
 85
 Petitioner argues that the district court erred in finding that sufficient evidence supported his conviction of gross abuse of a corpse. "A federal court sitting in habeas corpus review of a state criminal trial is to apply the usual standard of review for sufficiency of evidence that applies to the review of a federal criminal trial--whether a rational trier of the facts could find the defendant guilty beyond a reasonable doubt." Bagby v. Sowders, 894 F.2d 792, 794 (6th Cir.) (en banc) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)), cert. denied, 496 U.S. 929 (1990). The Supreme Court has explained that under "the sharply limited nature of constitutional sufficiency review[,]" a reviewing court must consider all evidence in the light most favorable to the prosecution, and if " 'faced with a record of historical facts that supports conflicting inferences[,]' " the reviewing court must presume " 'that the trier of fact resolved any conflicts in favor of the prosecution.' " Wright v. West, 112 S.Ct. 2482, 2492-93 (1992) (citing Jackson, 443 U.S. at 319, 326).
 
 
 86
 In this case, the district court found that sufficient evidence supported petitioner's conviction for gross abuse of a corpse.[3] In support of this conclusion, the district court stated:
 
 
 87
 [Petitioner] testified that he had splashed two and one-half gallons of gasoline around the apartment. [Petitioner] admitted that he had splashed some of the gasoline around the dead body of Beth McKinnon. [Petitioner] testified that he had intended to lie down next to Beth McKinnon and burn with her. [Petitioner] conceded that he believed that it was appropriate for people to be outraged by the manner in which he had treated the corpse of Beth McKinnon.
 
 
 88
 Jack Wellinghoff, an arson investigator for the Chillicothe Fire Department, testified that a burn mark through the carpet was "relatively close to where Beth's body was found," and that there was a "heavy gush or pour of a flammable liquid in this area." The coroner testified that Beth McKinnon's corpse was covered with fire debris and ashes.
 
 
 89
 J.A. 447-48 (citations to trial transcript omitted). We agree with the district court that this evidence, viewed in the light most favorable to the prosecution, is sufficient for a rational trier of the facts to find petitioner guilty of gross abuse of a corpse. Therefore, we hold that the district court did not err in finding that this argument lacked merit.
 
 D.
 
 90
 Petitioner argues that the district court erred in concluding that petitioner was not denied effective assistance of counsel at trial. The district court's conclusion regarding counsel's performance is a mixed question of law and fact which we review de novo. Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir.1993). In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two-pronged test for determining whether counsel's representation of a criminal defendant at trial is so deficient as to require reversal of the defendant's conviction. The Court stated:
 
 
 91
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
 
 
 92
 Id. at 687. Thus, the issue is whether counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir.1992) (en banc), cert. denied, 113 S.Ct. 2969 (1993). "Under the Strickland test, a reviewing court's 'scrutiny of counsel's performance must be highly deferential,' and must strongly presume that counsel's advocacy fell 'within the wide range of reasonable professional assistance.' " Blackburn v. Foltz, 828 F.2d 1177, 1180 (6th Cir.1987) (quoting Strickland, 466 U.S. at 689), cert. denied, 485 U.S. 970 (1988). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Moreover, in determining whether counsel made serious errors, the standard to which an attorney is held is not that of the most astute counsel, but rather that of "reasonably effective assistance." Id. at 687.
 
 
 93
 Thus, trial counsel's tactical decisions are particularly difficult to attack. A defendant attacking his lawyer's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. (citation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690.
 
 
 94
 Petitioner raised ten alleged instances of ineffective assistance of counsel in his petition for habeas corpus before the district court, and the district court found that none of these assertions had merit. However, on appeal, petitioner only asserts that the district court erred in concluding that his counsel was effective with regard to eight of the ten instances raised before the district court. First, petitioner argues that his trial counsel was ineffective in not moving to suppress petitioner's hospital statement to Detective Caplinger, in which petitioner began to discuss the events on the evening of July 17, 1990, but then terminated the interview when he decided he would like to consult with a lawyer, and, furthermore, in playing the tape of the hospital interview during the defense case. Because the prosecution did not introduce petitioner's hospital statement into evidence, we conclude, as the district court did, that petitioner suffered no prejudice by his trial counsel's failure to file a pretrial motion to suppress this statement.
 
 
 95
 Likewise, we find no merit in petitioner's argument that his trial counsel was ineffective for introducing the statement during the defense case. The Court of Appeals for the Fourth District of Ohio held that petitioner failed to overcome the presumption that introduction of the recorded statement constituted sound trial strategy, stating:
 
 
 96
 It is apparent that appellant had to take the stand to support the theory of self-defense. By revealing the statement in its case-in-chief, appellant "stole the thunder" from the prosecution's cross-examination of appellant upon his extrajudicial statement. See State v. Tyler (1990), 50 Ohio St.3d 24, 34.
 
 
 97
 J.A. 84-85.
 
 
 98
 We agree with the district court that petitioner's trial counsel, after evaluating the weight of the evidence against petitioner, may have concluded that petitioner should try for a conviction on a lesser included offense such as voluntary manslaughter. In this regard, trial counsel may have introduced petitioner's statement to corroborate petitioner's anticipated testimony about the heated argument between petitioner and his wife concerning his wife's purported unfaithfulness and her desire to have a divorce before he stabbed her. Therefore, we conclude that in light of the presumption that a challenged action might be considered sound trial strategy, trial counsel's decision to introduce petitioner's hospital statement falls within the wide range of reasonable professional assistance.
 
 
 99
 Second, petitioner argues that trial counsel was ineffective for failing to object during voir dire to the prosecutor's characterization of Beth McKinnon as a "victim," and the case as "one of a series of senseless murders that have happened in our community lately." Trial counsel was not ineffective for failing to object to the prosecutor's reference to Beth McKinnon as a "victim" because this description was both factually correct and noninflammatory. Furthermore, the Ohio Court of Appeals found that the prosecutor's comment describing the case as "one of a series of senseless murders that have happened in our community lately" was isolated. Petitioner provides no support for his contention that this remark prejudiced him. Therefore, we conclude that this argument has no merit.
 
 
 100
 Third, petitioner argues that he was deprived of effective assistance of counsel because trial counsel did not object to the prosecutor's reference to petitioner during cross-examination as "Mr. Defendant." The record indicates that when the prosecutor referred to petitioner as "Mr. Defendant," the trial court called the prosecutor to the bench and admonished the prosecutor to stop referring to petitioner in this manner. The record further indicates that the prosecutor refrained from using the term thereafter. Thus, we conclude that petitioner suffered no prejudice from trial counsel's failure to object to the prosecutor's reference to petitioner as "Mr. Defendant."
 
 
 101
 Fourth, petitioner argues that trial counsel was ineffective for failing to object to the prosecutor's cross-examination of petitioner regarding petitioner's overnight consultation with his attorney. Similarly, in his fifth assertion of ineffective assistance of counsel, petitioner notes that trial counsel failed to object to the prosecutor's reference to this consultation during the prosecutor's rebuttal closing argument. As discussed earlier, petitioner has not shown that these comments prejudiced him such that he was denied a fundamentally fair trial.
 
 
 102
 Petitioner also argues in his fifth assertion that trial counsel was ineffective for failing to object to the prosecutor's reference to defense counsel as "someone who condones little white lies." Although petitioner did not raise this ground for ineffective assistance of counsel before the state court, the district court stated that it would address this issue; however, the district court did not explicitly address this issue. Memorandum Opinion and Order at 10 n. 2, J.A. 443. Regardless, we conclude that the prosecutor's isolated remark, standing alone or taken together with petitioner's other assertions of error, did not prejudice petitioner's defense.
 
 
 103
 Sixth, petitioner argues that he was denied effective assistance of counsel at trial by trial counsel's failure to provide proper notice to the prosecutor of an experiment that would support his theory of the fire's source, by trial counsel's failure to construct the experiment in an admissible manner, and by trial counsel's reliance on an expert who had not investigated the scene of the fire. The district court concluded:
 
 
 104
 [P]etitioner has failed to demonstrate that an admissible exhibit showing ignition of gasoline vapors by a pilot light on a gas range could have been properly constructed. Moreover, there is no reason to believe that the introduction of this exhibit would have changed the result of the proceedings.
 
 
 105
 The substance of what would have been demonstrated by the experiment, i.e., [petitioner's] claim that he was not guilty of arson because the gasoline fumes were ignited by the gas range before he had a chance to start the fire himself, was presented through the opinion of his expert witness. He also has not shown that it would have been possible or helpful for his expert to view the premises, which view would necessarily have occurred significantly after the fire, as opposed to viewing the pictures of the scene and reading the report of the official arson investigators.
 
 
 106
 J.A. 463-64. We agree. Petitioner has failed to show that these alleged mistakes of trial counsel affected the outcome of the trial. Therefore, we hold that this argument has no merit.
 
 
 107
 Seventh, petitioner asserts that trial counsel was ineffective for stating in closing argument in a self-defense case that petitioner "was conceptually an aggressor." In his closing argument, trial counsel explained:
 
 
 108
 [Petitioner] wanted [his wife] out [of their house] to put the economic leverage on her to keep her there. She wanted him out just because she wanted to be free. I don't--you know, that's what she wanted. But if--when--it's going to be real hard for us to ever know exactly what clicked, you know, why she said I want a divorce and I want it today. Now, everybody knows you can't get a divorce in one day. She wanted him out of her house all of a sudden. He was conceptually an aggressor. She had to get him out of her house.
 
 
 109
 J.A. 464. When taken in context, it is clear that trial counsel's reference to petitioner as "an aggressor" was related to his role in the argument between petitioner and his wife and not in reference to petitioner's role in the physical altercation that led to Beth McKinnon's death. Petitioner concedes this point in his brief when he states that "[r]egardless of the context in which the statement was made, the prejudicial impact upon the jury cannot be underestimated." Brief of Petitioner at 38. Petitioner provides no support for this contention, and we find it to be meritless.
 
 
 110
 Finally, petitioner argues that trial counsel was ineffective for requesting the trial court not to instruct the jury on the lesser included offense of involuntary manslaughter. However, trial counsel did request that an instruction be given for the lesser included offense of voluntary manslaughter. In requesting that the trial court not instruct the jury on involuntary manslaughter, defense counsel stated:
 
 
 111
 If it please the court and Mr. Ward. The defense also had some serious concerns about Involuntary Manslaughter as a charge. We are aware there is some authority in this district that Involuntary Manslaughter is always a lesser included offense to a Murder charge. We had specifically requested the Court to include a charge on Voluntary Manslaughter and the Court is including that charge. We believe that the facts of this case are more consistent with the lesser included offense of Voluntary Manslaughter than they are with Involuntary. We believe the jury would be confused. We have objected also to the inclusion of an Involuntary Manslaughter charge, and the record should further reflect that this has been discussed this morning with the defendant and it's my representation that I believe he understands the request that we've made of the Court and that is with his argument that our best trial strategy involves arguing the case based on the lesser included offense of Voluntary Manslaughter but not Involuntary Manslaughter.
 
 
 112
 J.A. 624. Thus, it is evident that trial counsel made the strategic choice to request that an instruction of involuntary manslaughter not be given so as to avoid confusing the jury. This decision clearly falls within the wide range of reasonable professional assistance. Petitioner attempts to rebut the presumption of soundness by noting that trial counsel also requested an instruction on negligent homicide which is not a lesser included offense of murder in Ohio. However, this fact is irrelevant to trial counsel's reason for requesting the trial court not to instruct the jury on involuntary manslaughter. Accordingly, we hold that the district court did not err in concluding that petitioner was not denied effective assistance of counsel.
 
 E.
 
 113
 Petitioner argues that the district court erred in failing to consider whether the cumulative effect of the alleged errors raised by petitioner denied him a fair trial. This court has held that regardless of whether each of a petitioner's alleged errors, standing alone, would require that we find a deprivation of due process, we may look to whether the cumulative effect of the errors was such that the petitioner was denied fundamental fairness. Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir.1988); Walker v. Engle, 703 F.2d 959, 968 (6th Cir.), cert. denied, 464 U.S. 951, and cert. denied, 464 U.S. 962 (1983); see United States v. Hurtado, 47 F.3d 577, 586 (2d Cir.1995), petition for cert. filed, No. 95-5684 (U.S. August 10, 1995). The Tenth Circuit has held that "cumulative-error analysis should evaluate only the effect of matter determined to be in error, not the cumulative effect of non-errors." United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir.1990); see Lundy v. Campbell, 888 F.2d 467, 481 (6th Cir.1989) (refusing to include in the court's cumulative error analysis petitioner's assertions of error which the court held were not arguably prejudicial to petitioner's right to a fundamentally fair trial), cert. denied, 495 U.S. 950 (1990). Likewise, the Fifth Circuit has held that "any cumulative error theory must refer only to errors committed in the state trial court. A habeas petitioner may not just complain of unfavorable rulings or events in the effort to cumulate errors." Derden v. McNeel, 978 F.2d 1453, 1458 (5th Cir.1992) (en banc), cert. denied, 113 S.Ct. 2928 (1993). Moreover, in Derden, the Fifth Circuit also held that "the error complained of must not have been procedurally barred from habeas corpus review." Id.
 
 
 114
 In his petition for habeas corpus review, petitioner raised six alleged errors in the trial court. The district court found, and as earlier discussed, we agree, that petitioner was procedurally barred from raising his first, third, and fourth assignments of error. Therefore, these alleged errors may not be included in any cumulative error analysis. Moreover, we find that the remaining allegations of error in the trial court, when considered individually or together, "pale into relative insignificance" given the weight of the evidence against plaintiff. Lundy, 888 F.2d at 481. Accordingly, we hold that the cumulative effect of the errors in the trial court did not deny petitioner a fair trial.
 
 F.
 
 115
 Finally, petitioner argues that the district court erred in failing to conduct an evidentiary hearing. The Supreme Court has held:
 
 
 116
 Where the facts are in dispute the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the facts.... We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the factfinding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.
 
 
 117
 Townsend v. Sain, 372 U.S. 293, 313 (1963), overruled in part on other grounds, Keeney v. Tamayo-Reyes, 504 U.S. 1, 5 (1992).
 
 
 118
 Petitioner argues that the state court's factual determinations were not fairly supported by the record as a whole. In support of this contention, petitioner sets forth "[a] representative list of the factual disputes not adequately resolved by the trial court." Brief of Petitioner at 46. This list includes petitioner's allegations that his trial counsel was ineffective; that the prosecutor's alleged misconduct denied him a fair trial; that the source of the fire in his apartment was uncertain; that insufficient evidence supported petitioner's conviction of gross abuse of a corpse; and that the trial court's denial of his motion for individual voir dire denied him a fair trial.
 
 
 119
 We find no merit in this argument. Each of petitioner's "representative" factual disputes was fully presented to either the state trial or appellate court, and the findings of these courts are supported by the record. Accordingly, we hold that the district court did not err in not conducting an evidentiary hearing.
 
 III.
 
 120
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable L. Clure Morton, United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 The suicide note was addressed to petitioner's family and stated:
 Dad, Ma, Joe, Cathy. First of all you must know by now what has happened. Well let me explain. A lot of things have changed over the last three and a half years. I made my first mistake by not listening to Dad. He told me to come home first before I got married, but I said, no and then I should have realized the rest when she wanted to leave our house. Well the rest is history. I did what I did because it was the best way to end it in my eyes. If I could not have her, nobody would. Please realize it was not your fault. It was nobody's fault but mine. I know it's going to be hard to understand, but please be happy. I'm going on to heaven.
 J.A. 434-35 (quoted in the district court's memorandum opinion and order).
 
 
 [2]
 Petitioner also argues that he was denied a fair trial by the prosecutor's reference to the fact that petitioner did not testify until the end of the defense case. Petitioner did not raise this issue before the state appellate court and is thus procedurally barred from arguing this issue now. Engle, 456 U.S. at 128-29
 
 
 [3]
 Ohio Rev.Code Sec. 2927.01(B) provides:
 No person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities.