*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0115P (6th Cir.)
File Name: 04a0115p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

ROBERT CAMPBELL,
        *Petitioner-Appellant,*

v.                                    No. 03-1178

UNITED STATES OF AMERICA,
        *Respondent-Appellee.*

—————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-73211—Arthur J. Tarnow, District Judge.

Argued: March 18, 2004

Decided and Filed: April 20, 2004

Before: COLE and GILMAN, Circuit Judges;
SCHWARZER, Senior District Judge.*

—————————

## COUNSEL

**ARGUED:** Dennis J. Clark, PLUNKETT & COONEY, Detroit, Michigan, for Appellant. Michael R. Mueller,

—————————

*The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Dennis J. Clark, PLUNKETT & COONEY, Detroit, Michigan, for Appellant. Michael R. Mueller, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

—————————

## OPINION

—————————

RONALD LEE GILMAN, Circuit Judge. Robert Campbell appeals from the district court's denial of his post-conviction motion to vacate his sentence. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

### I. BACKGROUND

After two mistrials as a result of hung juries, a third grand jury indicted Campbell on the following three counts: (1) conspiracy to possess controlled substances with the intent to distribute and conspiracy to actually distribute the controlled substances, all in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) aiding and abetting the possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) aiding and abetting the possession of heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In July of 1998, a jury found Campbell guilty on all counts. The district court sentenced Campbell to 324 months of imprisonment and 5 years of supervised release.

Campbell appealed, alleging numerous errors. In October of 2000, this court issued an amended opinion that affirmed his conviction and sentence by a 2 to 1 vote, with the dissent favoring a new trial because of the alleged prosecutorial misconduct that occurred during closing argument.

Campbell petitioned to vacate his sentence pursuant to 28 U.S.C. § 2255 in August of 2001. The case was referred to a magistrate judge, who issued a 30-page Report and Recommendation (R&R) concluding that the motion should be denied. Over Campbell's objections, the district court adopted the R&R. Campbell then applied for a certificate of appealability as to nine issues, all of which the district court certified. In January of 2003, Campbell filed a timely notice of appeal.

## II. ANALYSIS

### A. Ineffective-assistance-of-counsel claims

Campbell asserts numerous ineffective-assistance-of-counsel claims on appeal. To prevail on these claims, he must establish that (1) his "counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). "The objective standard of reasonableness is a highly deferential one and includes a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003) (quotation marks omitted). A "reasonable probability" has been defined by the Supreme Court as "a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

When deciding ineffective-assistance claims, courts need not address both components of the inquiry "if the defendant makes an insufficient showing on one." *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* These claims, as part of Campbell's motion to vacate his sentence under 28 U.S.C. § 2255, are reviewed de novo. *Griffin*, 330 F.3d at 736.

### 1. Ineffectiveness based upon alleged Speedy Trial Act violation

Campbell first argues that the district court erred in denying his claim that his counsel rendered ineffective assistance by not moving for a dismissal of the indictment based upon alleged violations of the Speedy Trial Act. 18 U.S.C. §§ 3161-74. The Act requires that a criminal defendant be brought to trial within 70 days after the filing of an indictment or an arraignment, whichever is later. 18 U.S.C. § 3161(c)(1). A retrial that follows a mistrial must start "within 70 days from the date the action occasioning the retrial becomes final . . . ." 18 U.S.C. § 3161(e). If a defendant is not brought to trial within 70 days, taking into account excludable time periods under the Act, the district court is obligated to dismiss the indictment on the defendant's motion. 18 U.S.C. § 3162(a)(2); *United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir. 1996). The dismissal may be either with or without prejudice. *Id.*

Campbell alleges the following three violations of the Speedy Trial Act: (1) 83 days elapsed between the end of his first trial and the start of his second, (2) approximately 157 days elapsed between the second mistrial and the dismissal of the second indictment, and (3) 78 days elapsed between the dismissal of the second indictment and Campbell's arraignment on the third superseding indictment. The magistrate judge's R&R concludes that even if violations of the Speedy Trial Act did occur, Campbell cannot demonstrate that he was prejudiced as required by *Strickland*. For the reasons that follow, we agree.

In his brief, Campbell asserts that the alleged violations of the Speedy Trial Act prejudiced him, but he provides little explanation and no authority to support his contentions. Campbell says that the prejudice "is obvious" and that "there clearly was prejudice suffered by Campbell." But he does not allege any specific prejudice, such as a witness becoming unavailable.

Under the Speedy Trial Act, courts must consider the following three factors when determining whether to dismiss an indictment with or without prejudice: "[1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of [the Act] and on the administration of justice." 18 U.S.C. § 3162(a)(1). As explained in the R&R, "[e]ach of these factors would have counseled a dismissal without prejudice" in Campbell's case:

Defendant was charged with involvement [in] an extensive, serious drug distribution conspiracy, for which he was sentenced to nearly 30 years' imprisonment. As to the second factor, the delays in defendant's case were not extensive and were occasioned in part by the complexity of the procedural issues involved, including two previous hung juries and a reindictment because of an improperly constituted grand jury. Further, there is no evidence of bad faith or any attempt to take advantage of the delay on the part of the prosecution. Finally, as to the third factor, defendant does not allege that he suffered any actual prejudice as a result of the delay, and there is no allegation that the government engaged in any improper behavior which must be deterred in order to insure compliance with the Act. In these circumstances, any dismissal under the Act would have been without prejudice.

We have no basis to fault the magistrate judge's analysis. Because Campbell cannot show that he was prejudiced by his trial counsel's failure to request dismissal for the alleged violations of the Speedy Trial Act, we affirm the district court's denial of relief to Campbell on this claim.

### 2. *Ineffectiveness based upon failure to request a downward departure*

Campbell next argues that his trial counsel rendered ineffective assistance by failing to request a downward

departure at sentencing based upon Campbell's crime-free post-offense conduct and based upon the disproportionality between his sentence and those of his codefendants. Neither post-offense behavior nor disproportionality, however, is mentioned in the Sentencing Guidelines as a basis for departure. U.S. Sentencing Guidelines §§ 5K2.1-.21; *see Koon v. United States*, 518 U.S. 81, 96 (1996) (noting that a sentencing court "must bear in mind the [Sentencing] Commission's expectation that departures based on grounds not mentioned in the Guidelines will be highly infrequent").

Under the Sentencing Guidelines, the sentencing court may impose a sentence below the guideline range where a mitigating circumstance exists "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S. Sentencing Guidelines Manual § 5K2.0 (quotation marks omitted). The R&R and the government both note that neither post-offense behavior nor disproportionality is mentioned in the Sentencing Guidelines as a basis for departure. *See* U.S. Sentencing Guidelines Manual § 5H1.1-.12 (listing "certain offender characteristics" relevant "to the determination of whether a sentence should be outside the applicable guideline range").

Campbell argues, however, that his lack of involvement in drug activity or other criminal conduct since his arrest rises to the level of "extraordinary post-offense behavior." But as this court noted in *United States v. Biehl*,

[s]ome degree of presentence rehabilitation is to be expected from a penitent defendant, whether due to a true acceptance of responsibility or from one who simply wants to "put his best foot forward" at sentencing with hopes of receiving leniency from the sentencing court. Furthermore, in order to keep the temporary liberty defendant was given by delaying his sentence for almost three years, abiding by the fairly typical terms of his

presentence release is not unexpected. As the First Circuit stated, "such predictable reactions, while laudable, fall shy of what we believe is necessary to take cases out of the heartland."

Nos. 98-3318, 98-3346, 1999 WL 98600, at *3 (6th Cir. Jan. 25, 1999) (unpublished opinion) (quoting *United States v. Sklar*, 920 F.2d 107, 117 (1st Cir. 1990)). Because Campbell failed to show that he was prejudiced by his counsel's failure to move for a downward departure based upon either disproportionality or post-offense behavior, we affirm the district court's denial of relief to Campbell on this ground.

### 3. Ineffective assistance based upon trial proceedings

Campbell also argues that the following errors occurred during the trial that deprived him of his Sixth Amendment right to the effective assistance of counsel:

#### a. Failure to object to government witness's reference to organized crime

Campbell contends that his trial counsel was ineffective for failing to object and move for a mistrial after government witness Richard Carroll, a New York City police officer, testified that he was assigned to the Organized Crime Control Bureau at the time of his testimony. This testimony, according to Campbell, "implicitly linked Campbell to this criminal group which has [] strongly negative connotations in the minds of most citizen jurors." The R&R's thorough analysis of this issue explains why Campbell is not entitled to relief on this basis:

Although defendant contends that this remark was "irrelevant, inflammatory and prejudicial," he does not state how he was prejudiced by this single reference to organized crime. Notably, the comment was in no way connected to his case, but was simply part of background

testimony concerning the witness's current employment. Nowhere in his testimony did Carroll relate any of the allegations against defendant to organized crime, and he also testified that he was assigned to the Street Unit, not the Organized Crime Control Bureau, at the time he arrested [Campbell's] coconspirator Carol Bayless. Thus, there is not a reasonable probability that the comment influenced the jury's verdict in any manner. *See, e.g., United States v. Catalano*, No. 91-50372, 1992 WL 212322, at *2 (9th Cir. Sept. 3, 1992) (per curiam) (defendant not denied a fair trial by prosecutor's comments concerning organized crime where references were isolated and not inflammatory); *United States v. Thirion*, 813 F.2d 146, 156 (8th Cir. 1987) (defendant not denied a fair trial by question relating to whether defendant, an attorney, had represented an organized crime figure; the matter came up only once during the course of a lengthy trial and defendant's answer linked the client, and not the defendant, to organized crime) . . . .

Because Campbell fails to show that this comment prejudiced him, we affirm the district court's denial of relief to Campbell on this issue.

#### b. Prejudicial remarks to the jury

Campbell argues that his trial counsel rendered ineffective assistance by making prejudicial remarks to the jury during his opening and closing statements. In his opening statement, for example, Campbell's counsel stated:

Perform the duties that your oath says that you will do. And whatever your verdict is, it is. If your verdict ultimately is guilty, so be it; it's guilty. That's what our system is about . . . .

Campbell contends that his counsel's comments evidenced a "lack of concern for the verdict" and that his counsel should

have instead argued "that a reasonable doubt, or doubts, should arise from the evidence . . . ."

As noted in the R&R, these comments "do not amount to constitutionally ineffective assistance":

On the contrary, counsel repeatedly emphasized the burden of proof, requiring the prosecutor to prove the charges against petitioner beyond a reasonable doubt. He also repeatedly stated that, in his view and for the reasons he explained at length to the jury, the prosecutor had not met this burden. While counsel's discussion of the burden of proof was perhaps not as eloquent as it could have been, counsel at all times acted as an advocate for defendant and pressed defendant's case. In these circumstances, the comments of counsel do not amount to constitutionally ineffective assistance.

We agree, and accordingly affirm the district court's denial of relief to Campbell on this ground.

### c.    *Failure to propose defense-theory instruction*

Campbell argues that his counsel's failure to request a jury instruction explaining his theory of the case amounted to the ineffective assistance of counsel. In his argument, however, Campbell does not demonstrate how he was prejudiced by this omission. The R&R explains that Campbell

cannot show that he was prejudiced by counsel's failure because his theory was adequately conveyed to the jury by the Court's instructions on the elements of the government's charges and the burden of proof. Defendant's theory of the case was a simple denial of involvement in the conspiracy.

The R&R's reasoning is persuasive and we therefore affirm the district court's denial of relief to Campbell on this claim.

### d.    *Failure to call character witnesses*

Campbell contends that his case presented the jury with a classic credibility question because the government asserted that he was involved in drug activity and Campbell denied those allegations. He argues that character witnesses "testifying to [his] reputation for truthfulness and veracity would have been significant." According to Campbell, character witnesses were available to testify on his behalf, but his trial counsel failed to call them. Campbell concludes that this failure amounts to the ineffective assistance of counsel.

Both the R&R and the government note, however, that Campbell failed to provide any information regarding "what witnesses should have been examined more fully or what additional witnesses should have been called." Consequently, Campbell cannot rebut the strong presumption that his attorney's actions were the product of sound trial strategy. *Strickland v. Washington*, 466 U.S. 668, 690 (1984) ("[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). We accordingly affirm the district court's denial of relief to Campbell on this basis.

### e.    *Eliciting of prejudicial testimony*

Campbell argues that his trial counsel rendered ineffective assistance by eliciting prejudicial testimony from three government witnesses on cross-examination. During the cross-examination of a Drug Enforcement Agency (DEA) agent, Campbell's trial counsel asked whether the agent felt that Campbell "may have been somehow with or involved with" the other members of the alleged conspiracy. Campbell contends that such testimony indicating a connection between Campbell and "admitted drug traffickers . . . could only have inured to Campbell's detriment." With regard to this testimony, the R&R notes that the questions preceding and following the challenged question show that Campbell's trial

counsel was attempting to cast doubt upon the DEA agent's belief:

> Counsel was trying to show that the agent's belief was not credible given that he did not have the [car that Campbell was traveling in] followed by another agent when it left the motel parking lot [where the other coconspirators were]. Counsel asked a number of questions establishing this fact, as well as the fact that the agent did not see defendant carrying anything either to or from the room in which the other conspirators were apparently conducting the transaction.

Campbell next argues that his counsel's cross-examination of a police officer was improper because an inquiry as to where the police officer had previously seen a picture of Campbell led the officer to respond that he had "seen a picture on a prior narcotic raid." This answer is most likely not what counsel expected, but, as the R&R notes, the question was part of a legitimate strategy on the part of Campbell's attorney to question the officer about his observations and identification of Campbell.

Finally, Campbell argues that his defense counsel's question to a DEA agent about whether he was "relying on the word of government witnesses Carol Bayless, Orlando Bayless, Larry Anderson, and Christopher Owens" was improper given that the DEA agent answered: "Not solely the fact of the people that you were discussing." Campbell contends that this answer implied that there were other witnesses and other evidence that had not been presented at trial and that such evidence would have been deemed improper had it been elicited by the prosecution. Again, we agree with the R&R's analysis, which is as follows:

> This isolated statement came after counsel elicited repeatedly from the agent that he was, in fact, relying primarily on the word of the government witnesses, and that he had no independent evidence, through

> surveillance, to indicate that the defendant was involved in the crime. In light of counsel's successful cross-examination, it is difficult to see how this isolated statement would have, in defendant's view, [led] the jury to conclude that there were other witnesses who did not testify.

The R&R reasoned overall that

> [w]hile counsel's questions to the witnesses may illustrate a classic example of the first rule of cross-examination; don't ask a question unless you know what the answer will be, the only issue for the Court is whether counsel's conduct in asking the question fell below an objective standard of reasonableness.

We agree with the R&R's conclusion that Campbell has failed to show that his counsel's performance was deficient and therefore affirm the district court's denial of relief to Campbell on this issue.

### f.    *Failure to impeach witness Orlando Bayless*

Campbell contends that his trial counsel's failure to impeach Orlando Bayless—a government witness and one of Campbell's coconspirators—constituted the ineffective assistance of counsel. He argues that his trial counsel should have impeached Bayless regarding inconsistencies between Bayless's testimony at Campbell's second and third trials concerning the amount of money Campbell used to purchase the drugs. Campbell also contends that his trial counsel should have impeached Bayless with the statement that Bayless initially gave to the police, in which he denied any knowledge of the money seized by the police.

We agree with the R&R's analysis and conclusion on this issue, which is as follows:

It is true that counsel could have chosen to attack Bayless through the inconsistencies in his testimony. However, the inconsistencies identified by defendant were relatively minor, addressing whether defendant had brought $70,000 or $80,000 to the motel. Counsel instead chose to focus his attack on Bayless on the substantial sentence reduction Bayless was hoping to receive in exchange for his testimony, and on Bayless's significant drug related activity. This was a reasonable trial strategy. Further, defendant is unable to establish that he was prejudiced by counsel's failure to question Bayless about these minor inconsistencies.

Accordingly, we affirm the district court's denial of relief to Campbell on this issue.

### g.  *Failure to object to alleged prosecutorial misconduct*

Campbell argues that his trial counsel's failure to object to several instances of alleged prosecutorial misconduct during the government's closing argument and to move for a mistrial based upon that alleged misconduct constituted the ineffective assistance of counsel. Specifically, Campbell contends that the prosecutor improperly (1) vouched for the credibility of the government's witnesses, (2) expressed his personal opinion as to Campbell's guilt, and (3) made inflammatory emotional appeals to the jury.

Campbell raised these identical claims as substantive issues in his direct appeal. A prior panel of this court held that the prosecutor's remarks were isolated and that "[e]ven if the closing argument improperly appealed to the emotions of the jury, the error, if any, was not plain because there was ample evidence in the record to convict Robert." *United States v. Campbell*, Nos. 98-1782, 98-2174, 2000 WL 1597858, at *4 (6th Cir. Oct. 19, 2000) (unpublished opinion). In Campbell's § 2255 proceedings, the magistrate judge analyzed the claim of ineffective assistance of counsel based upon the alleged

prosecutorial misconduct and noted that this court had rejected the substantive claims on direct appeal. Given this court's resolution of these claims, the R&R concluded that Campbell could not show that his counsel was deficient or that he was prejudiced by his counsel's failure to object or move for a mistrial.

The district court disagreed with the magistrate's R&R on this point, rejecting "that portion of the R&R that states the prosecutor's statements did not rise to prosecutorial misconduct." "[I]n the absence of a pronouncement from the Sixth Circuit on this case," the district court said that it "would have found prosecutorial misconduct."

We need not resolve this difference of opinion between the magistrate judge and the district judge, especially because we do not read this court's prior decision as absolving the prosecutor of any misconduct. The earlier decision on this issue is instead based upon the isolated nature of the remarks and the lack of prejudice to Campbell. To succeed on his ineffective assistance of counsel claim, Campbell must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). This he has been unable to do. In the case before us, no less than four members of the alleged drug conspiracy testified against Campbell at trial. Given the overwhelming evidence establishing Campbell's guilt, we believe that he would not have been able to show that, but for his attorney's failure to object to the prosecutor's alleged misconduct, the result would have been different. We accordingly affirm the district court's denial of relief to Campbell on this issue.

### h.  *Ineffective assistance based upon the cumulative effect of all alleged errors*

Campbell's final ineffective-assistance-of-counsel claim is that the "numerous errors concerning matters of great

importance . . . had to have [had] a substantial effect on the jury." We acknowledge that trial-level errors that would be considered harmless when viewed in isolation of each other might, when considered cumulatively, *require reversal of a conviction. United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993). But we also agree with the R&R that "the accumulation of non-errors cannot collectively amount to a violation of due process." *See McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995) (unpublished opinion) (quoting *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir.1990) ("[C]umulative-error analysis should evaluate only the effect of matter determined to be in error, not the cumulative effect of non-errors."); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999) ("[T]he accumulation of non-errors does not warrant a new trial.").

Because Campbell has not shown that any of the alleged instances of ineffective assistance of counsel deprived him "of a fair trial, a trial whose result is reliable[,]" *Strickland*, 466 U.S. at 687, he cannot show that the accumulation of these non-errors warrant relief. We therefore affirm the district court's judgment on this issue.

## B. *Apprendi* claim

In a completely difference line of attack, Campbell argues that his sentence violates the rule established by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. This court held in *United States v. Page*, 232 F.3d 536, 542-43 (6th Cir. 2000), that *Apprendi* also applies to the determination as to the amount of drugs necessary to impose the mandatory minimum sentences provided in 21 U.S.C. 841(b)(1). *Apprendi* does not require that a precise amount of drugs be found by the jury; it suffices that the jury finds

beyond a reasonable doubt the minimum amount specified in the indictment and that "the ultimate sentence does not exceed the statutory maximum for this amount." *United States v. Zidell*, 323 F.3d 412, 429 (6th Cir. 2003).

The government argues that Campbell failed to raise his *Apprendi* claim either in the trial court or on direct appeal. But Campbell was tried and sentenced in 1998 before *Apprendi* and its precursor, *Jones v. United States,* 526 U.S. 227, 243 n.6 (1999) (stating *Apprendi*'s general rule), were decided. This court has noted that a defendant's objection to the quantity of drugs attributed to him might suffice to preserve an *Apprendi* challenge for appeal. *United States v. Stewart*, 306 F.3d 295, 311 (6th Cir. 2002).

The present case presents a different procedural posture, however, in that Campbell is arguing that by timely objecting on direct appeal to the drug quantities, he preserved his *Apprendi* claim for his § 2255 proceedings. *Apprendi* was decided in June of 2000, after oral argument in Campbell's direct appeal, but a few months *before* this court issued its decision. Campbell therefore could have cited *Apprendi* as supplemental authority while his direct appeal was pending. Fed. R. App. P. 28(j) ("If pertinent and significant authorities come to a party's attention after the party's brief has been filed—*or after oral argument but before decision*—a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations.") (Emphasis added). He in fact failed to do so.

Because our ultimate disposition of this issue is not dependent on whether or not Campbell preserved his *Apprendi* challenge, we will assume without deciding that he did. The parties do not dispute that if *Apprendi* applies to this case, then the quantity of drugs Campbell allegedly possessed should have been submitted to the jury and proved beyond a reasonable doubt. Despite this, *Apprendi* errors are considered to be trial-type errors subject to harmless-error review. *United States v. Copeland*, 321 F.3d 582, 603 (6th

Cir. 2003). Thus, if the government "can demonstrate beyond a reasonable doubt that the jury would have found the defendant liable for the drug quantity at issue in sentencing, this court must consider the error harmless and sustain the defendant's sentence." *Id.*

Campbell's 324-month sentence was subject to the enhanced sentencing range governed by 21 U.S.C. § 841(b)(1)(A), which increases the range of a defendant's sentence from no mandatory minimum and a 20-year maximum prescribed in 21 U.S.C. § 841(b)(1)(C) to a mandatory minimum of 10 years and a maximum of life if the conviction involves more than one kilogram of heroin or more than five kilograms of cocaine. The increase in Campbell's sentencing range, therefore, was attributable to the amounts of heroin and cocaine involved in the conspiracy. We agree with the R&R's conclusion that once the jury found beyond a reasonable doubt that Campbell was involved in the conspiracy, "it could have had no doubt that the conspiracy involved more than one kilogram of heroin and more than five kilograms of cocaine."

The police seized 34 kilograms of cocaine and 2 kilograms of heroin on a single occasion from one of Campbell's coconspirators, to say nothing of the 150 kilograms or more of cocaine and heroin proven to be involved in the overall conspiracy. "If this jury was going to convict [Campbell] at all—which it plainly did— there is simply no way on this record that it could have failed to find that he was conspiring to distribute" one kilogram or more of heroin and five kilograms or more of cocaine. *United States v. Nance*, 236 F.3d 820, 826 (7th Cir. 2000). Accordingly, we affirm the district court's denial of relief to Campbell on his *Apprendi* claim.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.