■ In the Matter of MEDITRUST C/O CONIFER PARK, INC. (THE MEDIPLEX GROUP, INC.), Appellant, v ROSALIE FAHEY, as Assessor of the Town of Glenville, et al., Respondents. (And

Another Related Proceeding.) [641 NYS2d 202] —White, J. Appeal from an order of the Supreme Court (Caruso, J.), entered June 27, 1995 in Schenectady County, which, in two proceedings pursuant to RPTL article 7, granted respondents' motions for summary judgment dismissing the petitions.

These RPTL article 7 proceedings involve a 225-bed alcohol and drug abuse residential treatment facility located on a 31.66-acre parcel of property in the Town of Glenville, Schenectady County. In 1983, the County sold the property to Conifer Park, Ltd. for $986,500. Thereafter, in 1984 Conifer Park transferred the property to Mediplex of New York, Inc. for $6,500,000. Two years later, Meditrust, a Massachusetts business trust, acquired the property from Mediplex for a recited purchase price of $60,000,000. On June 23, 1994, Sun Healthcare Group, Inc. acquired Mediplex in a merger. To effectuate the merger, Meditrust sold the property back to Mediplex for a recited price of $51,000,000. Meditrust Mortgage Investments, Inc. (hereinafter Meditrust Mortgage), a wholly owned subsidiary of Meditrust, provided partial financing for the sale by lending Mediplex $31,000,000. Mediplex, in turn, delivered a $31,000,000 promissory note secured by a mortgage on the subject property to Meditrust Mortgage.

For the 1993 and 1994 tax years, the property was assessed at $15,937,000 which, employing the applicable equalization rates, translated into a full value assessment of approximately $22,000,000. Claiming that the full value does not exceed $11,500,000, petitioner commenced these proceedings challenging the 1993 and 1994 assessments. Following some discovery, respondents moved for summary judgment dismissing the petitions. They supported their motions with various items of documentary evidence, particularly a State Board of Equalization and Assessment real property transfer report and a State Department of Taxation and Finance real property transfer gains tax questionnaire containing sworn information by petitioner that the property was sold in 1994 for $51,000,000 in an arm's length transaction that did not include the sale of personal property in excess of $500. Supreme Court, finding that this evidence conclusively established that the property was not overassessed, granted respondents' motions, prompting this appeal.

It is axiomatic that the ultimate purpose of valuation is to arrive at a fair and realistic value of the property involved so that all property owners contribute equitably to the public fisc (see, Matter of Allied Corp. v Town of Camillus, 80 NY2d 351, 356). Generally, the best evidence of value, if not explained

away as abnormal in any fashion, is a recent sales price established in an arm's length transaction (*see, Grant Co. v Srogi*, 52 NY2d 496, 511).

Petitioner maintains that the $51,000,000 sales price is not indicative of the fair market value of the property since it was an arbitrary figure established as a business convenience. Petitioner points out that the parties to the merger agreed on this figure as the overall blanket consideration to be paid for the various considerations, assignments and covenants made part of the merger agreement, and further agreed to subsequently allocate out real estate values for the various facilities involved in the merger by means of posttransfer appraisals. Petitioner candidly admits, however, that the $51,000,000 sales figure has certain income and corporate tax advantages for the entities involved in the merger.

We have consistently adhered to the position that taxpayers are bound by the manner in which they elect to structure a transaction and may not thereafter restructure it to escape the tax consequences of their election (*see, Matter of Lion Brewery v Tax Appeals Tribunal*, 217 AD2d 811, 813; *Matter of Transervice Lease Corp. v Tax Appeals Tribunal*, 214 AD2d 775, 778; *Matter of Ormsby Haulers v Tully*, 72 AD2d 845, 846). As this is precisely what petitioner is attempting to do, we must reject its claim that the $51,000,000 figure does not represent the sales price of the subject property, particularly as it may be reasonably inferred that it is continuing to utilize the $51,000,000 sales price to obtain corporate and income tax advantages. Moreover, as Supreme Court pointed out, petitioner cannot defeat summary judgment by interposing self-serving allegations contradicting its own prior sworn statements (*see, Sucese v Kirsch*, 199 AD2d 718, 719; *Kistoo v City of New York*, 195 AD2d 403, 404).

Petitioner's claim is further diluted by its payment of the deed recording tax calculated on the $51,000,000 sales price which, if the fair market value of the property is $11,500,000, resulted in an unnecessary overpayment of $163,200. Another curious business decision which militates against petitioner's position is the mortgagee's acceptance of this property as security for a $31,000,000 loan if it is worth only $11,500,000.

Even if we were to confine our analysis to petitioner's three appraisal reports, our disposition of this appeal would be unaffected. In our view these appraisals are insufficient in that two reports, besides being general and conclusory, are predicated on the reproduction cost less depreciation method without any demonstration that this property is a specialty (*see, Matter of*

*Allied Corp. v Town of Camillus*, 80 NY2d 351, 357, *supra*), while the third is superficial in its comparisons and analysis.

Therefore, in light of respondents' showing that the assessment placed on this property does not exceed its fair market value as established by its recent sales price and petitioner's failure to raise a material issue of fact, we affirm Supreme Court's order.

Cardona, P. J., Mercure, Peters and Spain, JJ., concur. Ordered that the order is affirmed, without costs.