■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NICHOLAS BENEVENTO, Appellant. [657 NYS2d 606] —Judgment of the Supreme Court, New York County (Jay Gold, J.), rendered May 12, 1994, convicting defendant, after a jury trial, of robbery in the second degree, and sentencing him to a term of $1^1/_2$ to $4^1/_2$ years imprisonment, reversed, on the law, and the matter remanded to Supreme Court for a new trial.

Defendant contends that the record in this matter, which he has not expanded by means of a motion pursuant to CPL 440.10, establishes that he was deprived of his right to the effective assistance of counsel (US Const 6th Amend; NY Const, art I, § 6). Violation of this right is normally asserted in the context of a CPL 440.10 motion because, in the usual case, "ineffectiveness of counsel is not demonstrable on the main record" (*People v Brown*, 45 NY2d 852, 853). The difficulty in assessing counsel's effectiveness solely upon the trial record is that it provides no explanation of counsel's tactics (*People v Diaz*, 220 AD2d 260, 261). For example, where the failure to request a particular hearing is in issue, the courts will necessarily presume that counsel exercised professional judgment unless the defendant can demonstrate that the asserted omission lacked a strategic or other legitimate explanation (*People v Rivera*, 71 NY2d 705). However, where the record "demon-

strates beyond cavil that defendant was lacking effective counsel", reversal is warranted (*People v Brown, supra,* at 853).

The record in the case before us discloses no discernible defense strategy and clearly indicates that counsel failed either to conduct meaningful cross-examination or to deliver a coherent summation. In his opening statement, the jury was told that defendant would be giving testimony, and its substance was outlined for the jurors. Defendant, however, never took the witness stand. At the charge conference, counsel asked for a jury instruction on intoxication, but he made no use of this defense during trial and even objected when witnesses made reference to defendant's drunkenness. Counsel requested that the jury be instructed on the lesser included offense of assault in the third degree, but based his argument that this was not a case of robbery but a case of assault on the outmoded precedent of *People v Lett* (39 NY2d 966; *see, People v Miguel,* 53 NY2d 920). He was successful in obtaining a *Sandoval* ruling precluding examination into the details of a prior guilty plea in a rape prosecution that also involved robbery. Even this accomplishment, however, was severely compromised. Having elicited from the arresting officer, over the prosecutor's objection, that defendant thought the case "was being turned into a rape instead of a robbery", counsel persisted in asking why defendant had reached this conclusion, evoking the response, "He said that he had done this once before."

While " 'meaningful representation' does not mean 'perfect representation' " (*People v Ford,* 86 NY2d 397, 404, quoting *People v Modica,* 64 NY2d 828, 829), the record before us demonstrates that defense counsel's representation was less than meaningful under the circumstances (*People v Satterfield,* 66 NY2d 796, 798-799). Despite the bizarre circumstances of the crime, defense counsel failed to pursue a coherent strategy to demonstrate that defendant lacked the capacity to formulate the intent to steal, which is "an indispensable ingredient of the crime of robbery (*People v Lopez,* 58 AD2d 516), [and] must independently be established beyond a reasonable doubt" (*People v Ramos,* 83 AD2d 817). However, it is understatement to observe that the record also contains overwhelming evidence of defendant's guilt, much of it provided by defendant himself, variously to passersby who assisted in his apprehension, to police officers who responded to the scene and to the Assistant District Attorney who first interviewed him. An eyewitness testified to seeing defendant strike the victim about the face as she lay on the ground trying to fend off his attack, and a police

officer testified that it was defendant who led him to the money defendant removed from the person of the victim and discarded during the ensuing pursuit. Defendant subsequently recounted these facts to an Assistant District Attorney. A motion to suppress his statements was denied, and no issue has been raised on appeal concerning this ruling.

As the Court of Appeals remarked in *People v Brown* (*supra,* at 853), "The result of reversal is unfortunate since the guilt of defendant was, and even with effective counsel most likely would have been, established by overwhelming evidence." Nevertheless, the standard espoused by the United States Supreme Court in *Strickland v Washington* (466 US 668, 687), requiring that the defendant demonstrate both that "counsel's performance was deficient and that the deficiency in performance prejudiced defendant" (*People v Ford, supra,* at 405), has not been adopted in this State (*People v Claudio*, 83 NY2d 76, 79; *see also, People v Vilardi*, 76 NY2d 67, 74, n 3). The standard under the New York Constitution (art I, § 6) remains that stated in *People v Baldi* (54 NY2d 137, 147): "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met". As we conclude, on the record before us, that defendant's representation was not meaningful under the totality of the circumstances, the judgment of conviction must be reversed. Concur—Murphy, P. J., Rosenberger and Rubin, JJ.

Mazzarelli, J., dissents in a memorandum as follows: The majority holds that the defendant was deprived of his constitutional right to the effective assistance of counsel because of what they characterize as an absence of any "discernible defense strategy", and additional errors committed by trial counsel. However, I believe that the majority has misread the record, and that counsel pursued the *only* viable defense based on the evidence. Thus, I conclude that defendant received meaningful representation in this practically indefensible case, and respectfully dissent.

In the early morning hours of June 17, 1993, the complainant was walking south on 8th Avenue in the West Village when she noticed a man, later identified as this defendant, following closely behind her. She became concerned and stopped, intending to let him pass, but defendant also stopped and asked her if she was afraid to have people walking behind her. The complainant said no, and then crossed the street and turned down Bleecker Street. When she reached the corner of Bank

Street she heard footsteps running up behind her, and suddenly defendant knocked her to the ground and began slapping and punching her in the face, while screaming obscenities at her. The complainant further felt defendant's hands fondling her breasts and pelvic area.

A paramedic and another citizen, both in the immediate vicinity, heard the complainant's screams, and observed defendant on top of her striking her. Both men yelled to defendant to stop, and he did. Several passersby, including a truck driver who had observed the assault from his truck, began chasing defendant. The truck driver eventually left his truck and spoke to defendant, initially advising him to flee. Defendant did not flee, and the truck driver escorted him back to the scene of the assault. On the way, defendant told the truck driver "I got to stop doing this, I'm beating people up to get their money so I can get drunk, so I can drink."

At the scene, defendant admitted to the arresting officer that he "went crazy," and offered to lead him to the money he had taken from the complainant. Defendant led him to a location on nearby West 4th Street, where the officer recovered three $5 bills. Back at the scene, the complainant stated that $15 was missing from her pocket. The defendant, who had the odor of alcohol on his breath, glassy eyes, and $200 cash in his pocket, was placed under arrest.

In an interview conducted the next day by an Assistant District Attorney, defendant stated that prior to the incident he had been drinking "a lot of Jack Daniels," and then upon observing the complainant on 8th Avenue, he "said something stupid to her and then went crazy on her." At one point when the prosecutor stepped out of the interview room, defendant told the arresting officer that the prosecutor was trying to turn this incident "into a rape instead of a robbery" because he "had done th[at] once before."

Notwithstanding the overwhelming evidence against him, defendant contends he is entitled to a new trial because his counsel was ineffective.* The standard for measuring ineffective assistance of counsel claims under the New York Constitution is whether, after viewing all the relevant facts and circumstances at the time of the representation, the attorney

---

* The People argue on appeal that this Court should decline to review the ineffective assistance claim since an inadequate record, not amplified by way of a CPL 440.10 motion, exists to permit review of counsel's strategic decisions (see, People v Satterfield, 66 NY2d 796; People v Love, 57 NY2d 998). This argument is only partially true, however, as the record is sufficient to review many of counsel's alleged errors.

provided meaningful representation (*People v Ford*, 86 NY2d 397, 404; *People v Baldi*, 54 NY2d 137, 147). To prevail on such a claim, "defendant bears the well-settled, high burden of demonstrating that he was deprived of a fair trial by less than meaningful representation" (*People v Hobot*, 84 NY2d 1021, 1022). "[T]rial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness" (*People v Baldi, supra,* at 146), and absent a basis in the record to conclude that counsel's performance was deficient, "it will be presumed that counsel acted in a competent manner and exercised professional judgment". (*People v Rivera*, 71 NY2d 705, 709.)

Further, although the New York Court of Appeals has not expressly adopted the prejudice standard articulated by the United States Supreme Court in *Strickland v Washington* (466 US 668; *see, People v Claudio*, 83 NY2d 76; *People v Vilardi*, 76 NY2d 67, 74, n 3), it is undeniable that concerns of prejudice, such as what effect, if any, counsel's errors had on defendant's defense or his right to a fair trial, *are* considered in determining whether the *Baldi* "meaningful representation" standard has been met (*see, People v Hobot, supra; People v Flores*, 84 NY2d 184, 188-189; *see also, People v Castellano*, 203 AD2d 116, *lv denied* 83 NY2d 965; *People v Mitchell*, 195 AD2d 299).

Contrary to the majority's position, the record does disclose a "discernible defense strategy". Starting with his opening statement, counsel revealed that his strategy was to concede that defendant had assaulted the complainant, but that he did so *without* the intent to steal money. Since the indictment contained only a single robbery count, and no assault count, the ultimate goal of this defense was crystal-clear: to convince the jury to find the defendant not guilty of robbery based on the lack of evidence of intent to steal, thereby acquitting him of the only charge in the indictment (*see, People v Ellis*, 81 NY2d 854, 856-857).

This strategy was not only reasonable, but was clearly the only viable one in light of the overwhelming evidence of defendant's identity as the attacker, and the testimony of multiple eyewitnesses that the attack occurred in the manner described by the complainant (*see, People v Ortiz*, 216 AD2d 164, *lv denied* 86 NY2d 799; *People v Maddox*, 213 AD2d 159; *People v Green*, 187 AD2d 259, *lv denied* 81 NY2d 762). Counsel pursued this defense throughout the course of the trial, while interweaving a marginal intoxication defense to further undermine the prosecution's evidence of his intent to steal. Counsel executed this strategy by highlighting the bizarre, spontaneous nature of the attack, by eliciting testimony that

defendant had $200 in his pocket at the time of arrest, and by securing an intoxication charge. It is notable that neither defendant nor the majority have suggested any alternative strategy that might have improved defendant's chances of gaining an acquittal.

The claim that counsel abandoned the intoxication defense, and actually objected to testimony of defendant's intoxication, is based on a misreading of the record. Regarding counsel's objections, the context of the questioning reveals that he was attempting to prevent the introduction of testimony harmful to the intoxication defense, which had occurred earlier when a witness testified that defendant's coordination was normal (*see, Matter of Angela Marie N.*, 223 AD2d 423, *lv denied* 88 NY2d 814). The securing of the intoxication charge, and the discussion of defendant's intoxicated state during summation, rebuts any claim of abandonment. Moreover, counsel's argument to the jury that the intoxication defense was established by the People's own witnesses appropriately addressed the absence of defendant's promised testimony.

The specific claims of ineffectiveness do not demonstrate, individually or collectively, a lack of meaningful representation. Defendant claims that counsel's laxity was apparent because he asked limited questions of the prospective jurors during the three rounds of voir dire. However, the record shows an exhaustive voir dire conducted by the court, and a warning from it that supplemental voir dire from the attorneys would likely be unnecessary. In fact, counsel's one question to the panel concerning his defense strategy that an assault but not a robbery had occurred was interrupted by the court, and counsel wisely chose not to argue the point. The record of the lengthy voir dire by the court, the fact that counsel exercised two challenges for cause, nine peremptories, and three challenges against alternates, as well as the prosecutor's decision not to ask *any* questions, substantially undermines this claim of error.

It is true that defense counsel erroneously requested that assault in the third degree be charged as a lesser included offense of robbery, and in doing so relied on discredited precedent (*compare, People v Miguel*, 53 NY2d 920, *with People v Lett*, 39 NY2d 966). However, other than the resulting embarrassment to counsel, this error had absolutely no effect on the case since the court properly denied the request to charge (*see, People v Crespo*, 179 AD2d 574, *lv denied* 79 NY2d 919 [no prejudice where attorney relied on old precedent in his unsuccessful request for production of the undercover officer]). Counsel's

pre-ordained trial strategy was unaffected by this error, and it was logical for counsel to decline the court's offer to charge petit larceny as a lesser included offense, which would have been inconsistent with his strategy that defendant lacked the intent to steal (*see, People v Bovell*, 154 AD2d 609).

Defendant next claims that his counsel erred by eliciting, during cross-examination of the arresting officer, damaging information of a prior crime which had been precluded at a *Sandoval* hearing. Defendant had previously been convicted of attempted rape in an incident that also involved allegations of robbery. The court fashioned a *Sandoval* compromise in which it indicated it would permit the defendant to be questioned about the robbery allegations, but not the facts underlying the rape charge.

The issue arose during the cross-examination of the arresting officer at trial concerning the prosecutor's interview of the defendant. After defense counsel asked the officer why defendant had refused to give a written statement, the officer replied that defendant had "felt [that] he was being trapped by [the prosecutor]." He further testified that defendant then told him that he thought the prosecutor "was making this [incident] into something it wasn't." Defense counsel then asked the testifying officer: "Isn't it true that [defendant] said he thought that [the prosecutor] was trying to make it into a robbery when in fact it was an assault?" After the prosecutor's hearsay objection was overruled, the witness responded "No, he felt it was being turned into a rape instead of a robbery." Defense counsel asked why defendant felt that way, and the officer responded "[Defendant] said that he had done this once before."

At a recess, defense counsel moved for a mistrial, arguing that the People's witness had circumvented the *Sandoval* ruling, and that he had not opened the door to the testimony. The court denied the motion, finding that counsel invited the witness's answer by asking an open-ended question. Counsel declined the court's offer for a curative instruction, obviously on the ground that it would only highlight the damaging information to the jury.

While an overabundance of caution might have avoided this scenario, counsel was not ineffective in attempting to utilize defendant's own statements to persuade the jury that the prosecutor was trying to "overcharge" this case (*see, People v Green*, 187 AD2d 259, *supra*). Such tactic was entirely consistent with his defense (*see, People v Steel*, 207 AD2d 744, *lv denied* 84 NY2d 1039; *People v Williams*, 174 AD2d 494, *lv denied* 78 NY2d 1015).

Moreover, the record is barren of any indication that counsel was aware that defendant had mentioned a previous *rape* to the officer. The Voluntary Disclosure Form and the parties' motion papers make absolutely no mention of defendant's statements to the officer during the prosecutor's interview. The single reference to these statements was made during the officer's *Huntley* hearing testimony, when he testified that defendant felt the prosecutor was making this crime into something else, "which he had been arrested for previously." However, the crime of rape was never mentioned, and the defendant's own hearing testimony suggested he believed the prosecutor was trying to characterize the case as a robbery, not a rape. This brief testimonial reference to a prior crime, which only inferentially implicated the rape allegations, was insufficient to require counsel to forgo a valuable line of questioning (*see, People v Hicks*, 226 AD2d 189, *lv denied* 88 NY2d 966; *People v Dominizzi*, 194 AD2d 338, *lv denied* 82 NY2d 753; *People v Molina*, 187 AD2d 356, *lv denied* 81 NY2d 844).

Nor did the additional errors claimed by defendant constitute the ineffective assistance of counsel. Counsel's cross-examination of the People's eyewitnesses was admittedly brief, comprising only a few pages of transcript in some instances. However, as the substance of their direct testimony was that they had observed defendant sitting on top of the complainant beating her, and that each testified consistently with the other, there was little advantage to the defense in keeping them on the stand for very long. Indeed, counsel merely extracted the one concession relevant to his strategy, that they did not observe any stealing, and permitted them to be excused. Similarly, extended testimony by the complainant and the arresting officer could only hurt defendant, and the better tactic was to focus on the legal argument that no robbery was committed.

While the majority finds that counsel's summation lacked coherence, in fact it brought together all the themes raised by defense counsel throughout the trial (*see, People v Boyton*, 189 AD2d 721; *cf., People v Winston*, 134 AD2d 546). Counsel admitted that defendant assaulted the complainant, but argued that the facts demonstrated both that the attack was not for the purpose of effecting the taking of property, and that he did not intend to permanently deprive her of property (*see, People v Sperantsas*, 211 AD2d 522, *lv denied* 85 NY2d 914; *People v Glover*, 165 AD2d 880, *lv denied* 77 NY2d 906). Counsel reminded the jury that defendant had $200 in his pocket when he was arrested, that he eschewed the chance to escape and

voluntarily returned to the crime scene, and that he expressed remorse for his behavior. While somewhat confusing, counsel's hypotheticals were consistent with this strategy.

Additionally, the record shows that counsel performed adequately in the other aspects of the case. He made the appropriate pre-trial motions, vigorously argued for suppression of defendant's statements at a *Huntley* hearing, at which defendant testified, secured a favorable *Sandoval* ruling, made unified opening and closing statements, and proffered an intoxication defense. In light of the overwhelming evidence, counsel presented the only rational defense available. Its lack of success does not constitute ineffective assistance. Accordingly, I dissent and would affirm the defendant's conviction.