■ In the Matter of LIBERTY HEALTHCARE MANAGEMENT GROUP, INC., Also Known as CONIFER PARK, Appellant, v ROSALIE FAHEY, as Assessor of the Town of Glenville, et al., Respondents. (And Another Related Proceeding.) [684 NYS2d 638] —Carpinello, J. Appeal from an order of the Supreme Court (Kramer, J.), entered April 2, 1998 in Schenectady County, which, in two proceedings pursuant to RPTL article 7, granted respondents' motions for summary judgment dismissing the petitions.

In September 1995, petitioner purchased the Schenectady County alcohol and drug abuse residential treatment facility known as Conifer Park, which has been the subject of prior RPTL article 7 proceedings before this Court (see, Matter of Meditrust v Fahey, 245 AD2d 661; Matter of Meditrust v Fahey, 226 AD2d 999). In Matter of Meditrust v Fahey (245 AD2d 661, supra [hereinafter Matter of Meditrust II]), this Court determined that the $15,937,000 assessment of the property for tax year 1995 was not excessive in light of evidence in the record that its value, as evidenced by the purchase price paid by petitioner, was $42.3 million. This figure was based on the

---

"recited consideration of $9,000,000" (*supra,* at 662) for the property, as well as a $33.3 million mortgage assumed by petitioner.

At issue in the instant RPTL article 7 proceedings is the $17,677,700 assessment on the property for tax years 1996 and 1997, respectively. As claimed by Meditrust in *Matter of Meditrust II (supra),* petitioner continues to maintain that the full value of the property does not exceed $9 million. In support of its position, petitioner now claims that the $33.3 million mortgage it assumed was spread over *three* pieces of property (i.e., Holliswood Hospital, Arms Acres and Conifer Park), a contention that Meditrust failed to provide documentation for in the prior proceeding. Petitioner's challenge to the 1996 and 1997 assessments was precluded by Supreme Court on the grounds of collateral estoppel and stare decisis. Specifically, it found that petitioner was "bound" by this Court's decision in *Matter of Meditrust II.*

A judgment fixing the value of property for taxation in one year, although evidence of its assessed value for a succeeding year, does not enjoy res judicata effect (*see, Vantage Petroleum v Board of Assessment Review,* 61 NY2d 695, 698; *People ex rel. Hilton v Fahrenkopf,* 279 NY 49, 52-53). This is so because each assessment is a separate proceeding (*see, People ex rel. Hilton v Fahrenkopf, supra*). Moreover, given the fact that petitioner was not a party to the prior proceeding, and the additional fact that on this record we cannot find as a matter of law that petitioner was in privity with Meditrust, the doctrine of collateral estoppel is equally inapplicable (*see, Matter of Juan C. v Cortines,* 89 NY2d 659, 667; *Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, 69; *cf., McCrory Corp. v Gingold,* 52 AD2d 23, 26-27, *lv denied* 39 NY2d 710). Nor are we persuaded that the doctrine of stare decisis, "which recognizes that legal questions, once resolved, should not be reexamined every time they are presented" (*Dufel v Green,* 198 AD2d 640, *affd* 84 NY2d 795), bars the instant proceeding since the propriety of the 1995 assessment involved the resolution of a factual issue by this Court (*see, People v Bing,* 76 NY2d 331, 337-338).

Upon a review of the record in this case, we are constrained to find that a question of fact exists as to the proper assessment of petitioner's property for tax years 1996 and 1997. Specifically, the former president of Mediplex Group filed an affidavit in opposition to respondents' motion for summary judgment indicating that a $51 million sale of the subject premises in 1994 was not an accurate reflection of the market

value of the property as it was the amount to which the property had been depreciated and the sale price was based on the cost of "unwind[ing]" 1986 sale-leaseback agreements. He further averred that the property was sold to petitioner in 1995 as part of a total transaction worth $40.8 million, which included nine different properties.

While this affidavit may be sufficient to defeat a finding as a matter of law that the property continues to be worth $51 million, we find it particularly unhelpful that petitioner, in attempting to argue that the property is worth no more than $9 million, has chosen to include only selected portions of the June 1995 purchase and sale agreement pursuant to which it acquired title to the property. Moreover, petitioner cites this agreement as support for an alleged allocation of $9 million of the $40.8 million purchase price to the subject premises. This excerpted agreement purports to value Holliswood Hospital, Arms Acres and Conifer Park at $9.5 million, $5.8 million and $9 million, respectively, totaling $24.3 million. However, approximately three months later these same properties were pledged as collateral for a $33.3 million mortgage. Suffice it to say that, while petitioner's assertion that the "full value of the [subject] premises does not exceed $9,000,000" appears to be patently specious, we are constrained to give petitioner an opportunity to establish the allegations in its petitions that the subject premises is overassessed.

Mercure, J. P., Peters, Spain and Graffeo, JJ., concur. Ordered that the order is reversed, on the law, without costs, and motions denied.