People v Webb (2004 NY Slip Op 50429(U))

[*1]

People v Webb

2004 NY Slip Op 50429(U)

Decided on May 21, 2004

Supreme Court, Kings County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 21, 2004

Supreme Court, Kings County,
 The People of the State of New York, Plaintiff,
against
James Webb, Defendant.
Indictment No. 15200/95

Abraham Gerges, J.
The defendant, pro se, moves to vacate the judgment on the ground that he received ineffective assistance of counsel, citing a litany of alleged deficiencies, and on the ground that the prosecution violated their Brady and Rosario obligations.
In deciding this motion, the court has considered the moving papers, exhibits, the People's affirmation in opposition, appendix, the hearing minutes, the trial minutes, the sentencing minutes and the defendant's pro se brief in the Appellate Division. The court file cannot currently be located.
Background
On August 15, 1995, the defendant was paroled from Orleans Correctional Facility after completing part of his sentence of imprisonment on an unrelated case.
Between August 17, 1995 and December 4, 1995, five women were attacked in the Clinton Hill section of Brooklyn, New York. Four of the women were raped, one was anally sodomized, and three were compelled to perform oral sex. Three women were asked if they ever had anal sex, to which each replied that she had "never" had anal sex. The perpetrator then did not compel such acts. The fifth woman was attacked but was able to escape before any sex act could be performed.
In each of the five attacks, before any illegal activity occurred, the perpetrator while speaking to the victims used a similar phrase. During the course of the four sexual attacks, the perpetrator said the same or similar words to each victim. At the conclusion of the four rapes, the perpetrator gave similar directions to each victim. In each of the sexual assaults, property was taken from the victim. In the December 4, 1995 sexual attack, the perpetrator stated that he was "burning down the location because he had lost his wallet." The location of this incident was then set ablaze.
Each of the five victims described the perpetrator as a dark-skinned black who had a gap in his teeth. Four of the victims described the perpetrator as being in his late thirties early forties, wearing jeans and white sneakers. In the last incident, the perpetrator took white sneaker laces [*2]from the victim.[FN1]
After the December 4 incident, the police took the victim in a police car and canvassed the area. While driving around in the area, a civilian approached the police vehicle and stated that the person they were looking for was hiding behind a garbage dumpster. An individual was located and the victim identified such person as the perpetrator. While in the hospital, the victim informed the detectives that the person she initially identified was in fact not the person who committed the crime and that she had been mistaken. The person was then released.
During this period a composite sketch of the alleged perpetrator was being circulated to law enforcement agents. The defendant's parole officer saw the sketch and informed the detective in charge of the investigation that the sketch looked just like the defendant. The detective then showed a photograph of the defendant to one of the victims, who immediately identified the defendant as the perpetrator.
On December 6, 1995, the defendant appeared before his parole officer and was arrested. He was placed in a lineup and identified by all five victims. After the lineup, the defendant was given Miranda warnings, which he voluntarily waived. The defendant admitted to losing his wallet, but stated he had lost it prior to December 4, 1995.
At the time of his arrest, the defendant was searched. In his pant's pocket, two white sneaker shoe laces were found and also the defendant was wearing a grey sweater. The white shoe laces were identified at trial by the last victim as similar to the shoe laces stolen from her.[FN2] The gray sweater was identified by the last victim as the sweater worn by her attacker.
The defendant was indicted, tried and convicted of the crimes. Scientific evidence established that the perpetrator of three of the sex crimes was azoospermatic.[FN3] No tests were performed on the liquid recovered from the fourth victim because shortly before the rape the victim had sex with her boy friend. A physical examination of the defendant showed that he suffered from congenital bilateral undescended testicles. This medical condition causes azoospermia. A doctor testified at trial that the odds that the defendant was not the perpetrator of the three sex crimes were 1 in 900,000.
At trial, the defendant was required to display his teeth. As described by the victims at trial and to the investigating officers, the defendant had gaps in his teeth.
At trial, the People presented 40 witnesses and 44 exhibits. The defendant presented 3 witnesses and 6 exhibits. The defense counsel vigorously cross examined witnesses, made numerous objections and motions.
Nonetheless, the defendant was convicted of all but one charge.
At sentencing, the defendant refused to admit that he was the person convicted of one of the predicate felonies alleged in the persistent violent predicate felony statement. Defense counsel vigorously contested the prosecution's proof that the defendant was the person convicted [*3]of a particular crime and was so successful that the People were required to call the justice (at the time of the hearing, the justice was a judge of the Appellate Division) who presided over the defendant's prior trial to identify him as the person whom he tried and who was convicted by the jury.
The defendant was adjudicated; a persistent violent felon and was sentenced to terms of imprisonment having a minimum of 25 years and a maximum of Life to run consecutive with each other.
The defendant appealed the conviction and the judgment was affirmed (285 AD2d 659). Leave to appeal to the Court of Appeals was denied (97 NY2d 689).
The defendant now moves to vacate the judgment.
Procedural Bars
CPL 440.10 (3) (a) permits a court to deny a motion to vacate a judgment without a hearing where the defendant could have, with due diligence and before sentencing, placed all essential facts on the record (People v Friedgood, 58 NY2d 467, 473; People v Degondea 3 AD3d 148, 159; People v Blake, 232 AD2d 288; People v Berezansky, 229 AD2d 768, 771).
CPL 440.10 (3) (b) permits a court to deny a motion if the ground or issue raised on the post conviction motion was previously decided on a prior motion (People v Glinton, 74 NY2d 779, 780; People v Medina, 240 AD2d 202, 203; People v Govan, 199 AD2d 815, 816).
Prior to sentencing, the defendant, pro se, moved to set aside the verdict (CPL 330.30). The defendant's current Brady and Rosario claims, and the defendant's current prosecutorial misconduct claims were all alleged in the moving papers. This court denied the motion.[FN4] The facts underlying much of the defendant's current ineffective assistance of counsel claims were raised in the motion to set aside the verdict as allegations of prosecutorial misconduct, and could have been also raised in post-conviction pre-sentence motion as an ineffective assistance of counsel claim. Those facts or legal theories that are alleged in the current motion to vacate the judgment but were not raised in the motion to set aside the verdict could have been raised on that motion.
The defendant's factual allegations regarding his arrest could have been placed on the record during his pretrial hearing to suppress his statement, and to suppress evidence or could have been raised in his CPL 330.30 motion.
The entire motion is denied as the legal and the factual issues claimed in this motion were either previously raised and rejected or could have been brought to the court's attention but were not so raised.
CPL 440.10 (2) (a) mandates that a court deny a post conviction motion if the ground or issue has previously been determined on the merits upon appeal and there has been no retroactive change in the controlling law (People v Baxter, 262 AD2d 1068; People v Marvin, 258 AD2d 964, 965; People v Hernandez, 191 AD2d 511, 512).
To the degree that the defendant's moving papers can be read as an attempt to relitigate [*4]this court's decision, denying suppression of the People's physical examination of the defendant, the Appellate Division ruled on the merits of this claim. Similarly, the defendant's claim of prosecutorial misconduct was raised in the defendant's pro se brief and was determined to be "without merit" (285 AD2d at 660).
The motion to vacate the judgment based on these allegations is mandatorily barred. The motion to vacate the judgment is denied as well on this basis.
CPL 440.10 (2) (c) mandates that a court deny a motion to vacate a judgment if all the necessary facts relating to the legal issue appear "on the record" (People v Cooks, 67 NY2d 100; People v Sadness, 300 NY 69). The "on the record" bar applies whether or not the issue (as opposed to facts) has been preserved for appellate review (People v Mower, 97 NY2d 239, 245-246; Cooks, 67 NY2d at 103 n1; People ex rel. Gibbs v Vincent, 39 NY2d 918, 919; People v Jossiah, 2 AD3d 743, 743; People v Donovon, 107 AD2d 433; see also People v McKay, 215 AD2d 221, 222).
To the degree that the defendant's papers can be read to allege that certain court rulings such as the denial of a Frye hearing, the denial of disclosure of certain records, the denial of defendant's request to introduce certain photographs of one of the crime scenes, or the denial of a mistrial form the basis for the current motion to vacate the judgment. These rulings appear on the record and could have been raised on appeal.
The motion to vacate the judgment based on these allegations is also denied as mandatorily barred.
CPL 440.30 (4) (c) permits a court to deny a motion to vacate a judgment without a hearing if the allegations of fact are conclusively rebutted by "unquestionable documentary proof" (People v Lindsey, 179 AD2d 915). Section (4) (d) permits a court to deny a motion to vacate a judgment without a hearing if essential facts are contradicted by a "court record or official documents" and there is "no reasonable possibility" that the allegations are true (People v White, 309 NY 636, 640-641).
Hearing, trial and sentencing minutes constitute both "unquestionable documentary proof" and "court records" (People v Vellucci, 13 NY2d 665, 666; White, 309 NY at 640).
The defendant's claim that defense counsel failed to investigate the defendant's alleged illegal arrest is rebutted by the extensive pretrial hearing conducted on the issue of defendant's arrest.[FN5]
The defendant's claim that defense counsel failed to insure that a missing evidence charge be given to the jury is rebutted by the minutes of the court's charge. The court's charge indicates that the court in fact gave such a charge.
The defendant's claim regarding counsel's failure to pursue the possibility that the person incorrectly identified by the last victim could have committed the other crimes is also rebutted by the trial record. The trial record indicates that as a result of the defense counsel's cross examination of the last victim, the court permitted the People to prove that the person incorrectly arrested had been incarcerated during three of the five incidents, and thus could not have committed those crimes.
[*5]
The defendant's claim that counsel failed to insure that the People's photograph of a bag was "removed" from evidence is contradicted by the trial minutes that in fact the photograph of the bag was stricken as a piece of evidence and the jury so instructed.
Also rebutted by the trial record is the claim that the court failed to inform the jury of matters that defense counsel requested it to take judicial notice.
The defendant's claim that the defense counsel during summation conceded that there was a "mountain of evidence concerning every element of the crime(s)" is rebutted by the trial record as defense counsel never so stated. To the degree that defense counsel indicated during summation that the People's evidence was like a tall building, the record shows that this statement was followed by a statement that it casts a long shadow, and like a shadow the evidence has no substance.
The sentencing record indicates that it was the defendant personally who insisted that he was not the person who was convicted of the challenged predicate crime. It was the defendant's insistence and the defense counsel's excellent arguments regarding the predicate felony that caused the People to call the trial justice to testify at the hearing.
The above claims relating to counsel's alleged deficiencies are rejected, and the motion to vacate is also denied on the ground that the record rebuts the factual basis for the claims.[FN6]
CPL 440.30 (4) (b) permits a court to deny a motion to vacate a judgment without a hearing if the moving papers do not contain sworn allegations as to all essential facts (People v Wells, 265 AD2d 589, 589; People v Lake, 213 AD2D 494, 495-496; People v Lawson, 191 AD2D 514, 515; see also People v Satterfield, 66 NY2d 796, 799; People v Session, 34 NY2d 254, 256). The affidavit must be from a person having actual or personal knowledge of the facts at issue (People v Pan, 245 AD2D 149, 150; People v Taylor, 211 AD2D 603). Conclusory allegations do not constitute sworn allegations of facts, as they are not facts but merely claims (People v Baptiste, 306 AD2d 562, 569; People v Hickey, 275 AD2d 511, 512; People v Smith, 251 AD2d 226, 227-228; People v Folks, 246 AD2d 433,434; People v Brown, 227 AD2d 691, 693; see People v Smith, 301 AD2d 671, 672). "Evidentiary facts must be provided" (People v Session, 34 NY2d 254, 256).
Virtually all of the defendant's allegations are conclusory and devoid of any evidentiary facts. For example, the defendant claims that his attorney never gave him copies of documents or failed to "guard against normally inadmissible evidence." The defendant never identifies which documents were never given to him or how those documents would have affected defense strategy or which evidence was inadmissible and why such evidence was inadmissible. Indeed, the trial record and defendant's motions establish that the defendant had many documents if not all of the documents. The claim that the missing documents were important to the defense strategy is speculative and conclusory. The record also establishes that the defense team consistently objected to evidentiary matters.
The defendant claims that counsel should have subpoenaed his jail records to show that [*6]when he left the prison he had a beard, and all the victims identified the perpetrator as clean shaven. The defendant fails to submit any such record and the factual claims as to their content is conclusory.
The defendant claims that an illegible photograph is Brady material. Assuming that a legible photograph showed that the defendant's wallet was present at the scene of the crime, the defendant's claim that this would have exonerated him rather than inculpate him is totally speculative.
The defendant's claim as to the meaning of certain notations on a dispatch sheet is also conclusory. The defendant's claim that certain numbers represent a social security number is conclusory and incorrect. Social Security number have more numbers than appear on the sheet. Even if the material represented what the defendant claims they represent, his allegation as to how these would have assisted the defense is speculative and conclusory.
The defendant's claim of prejudice by the alleged late turning over of Rosario material and the defendant's claim that the People were in possession of his parole records, and that the records indicate a conspiracy against him is conclusory as he has failed to show actual prejudice for the late turning over of the material, and failed to produce any records showing a conspiracy or any proof that the People were in possession of those records.[FN7]
The motion to vacate the judgment grounded on the above noted allegations is denied as conclusory.
CPL 440.30 (4) (a) permits a court to deny a motion to vacate the judgment if the moving papers fail to allege any legal basis for the motion (People v Baxley, 84 NY2d 208, 214; People v Nash, 273 AD2d 696, 697; People v Herrara, 197 AD2d 706, 706-707).
Defendant claims that an illegible photograph of the location of the fire was Rosario material and that it could not be considered as being turned over because it was illegible is without a legal basis. Rosario deals only with statements of a People's witness. A photograph is not a statement of a witness and is not as a matter of law Rosario material.
Also without legal basis is the claim that when an attorney who was working on the defendant's case left the Legal Aid Society such attorney was required to make a motion to withdraw. The court assigned the case to the Legal Aid Society, and not to a particular Legal Aid attorney. The assignment of an attorney to a case by the Legal Aid Society does not make such individual the attorney on the case. The attorney on the case is the Legal Aid Society not the individual so assigned.
The motion to vacate the judgment based on the above noted claims is additionally denied as without legal basis.
Although all of the defendant's claims are precluded by the procedural bars indicated above, the court feels compelled to partially address the merits of the defendant's allegations.
Adequacy of Counsel
"The Court of Appeals has time and time again advised that ineffective assistance of [*7]counsel is generally not demonstrable on the main record" (People v Harris, 109 AD2d 351). A motion to vacate the judgment is the appropriate vehicle to raise ineffective assistance rather than a motion to set aside the verdict (People v Bagarozy, 182 AD2d 565, 566), or by direct appeal (Massaro v United States, 538 US 500, 504-505; People v Garcia, 187 AD2d 868; People v Jiggetts, 178 AD2d 332; People v Williams, 178 AD2d 163, 165). This is true because even when the facts are on the record, the attorney's motivations are usually not on the record (Massaro, 538 US at 505; People v McNair, 294 AD2d 952, 952-953; People v Zeh, 289 AD2d 692, 695; People v Benevento, 239 AD2d 132, revd on other grounds 91 NY2d 708; People v Brown, 232 AD2d 193; see also People v Love, 57 NY2d 998, 999-1000; People v Castricone, 224 AD2d 1019, 1020; People v Brewster, 271 AD2d 181). Further, where there are both record and non record claims, a CPL 440 motion is the appropriate method by which to raise both claims (People v Hoyte, 273 AD2d 48).
The Sixth Amendment to the United States Constitution gives a defendant in a criminal proceeding the right to the assistance of counsel (Gideon v Wainwright, 372 US 335). This includes the right to "effective" assistance of counsel (Strickland v Washington, 466 US 668).
Counsel renders effective assistance when "the evidence, the law and the circumstances of a particular case, viewed in totality and as of the time of the representation reveal that the attorney provided meaningful representation . . ." (People v Baldi, 54 NY2d 137, 147). What constitutes effective assistance, moreover, is not susceptible to precise measurement (id. at 146-147). "To prevail on a claim of ineffective assistance, defendants must demonstrate that they were deprived of a fair trial by less than meaningful representation; a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice" (People v Flores, 84 NY2d 184, 187; People v Benn, 68 NY2d 941, 942). This standard is designed to provide the defendant with a fair trial in contrast to a perfect one (Yarborough v Gentry, — US —, 124 S Ct 1, 6, 157 L Ed 2d 1, 9; Flores, 84 NY2d at 187).
Isolated errors in defense counsel's representation ordinarily do not constitute ineffective assistance of counsel (Yarborough, — US —, 124 S Ct at 6, 157 L Ed 2d at 9 ;People v Henry, 95 NY2d 563). A single error, if it effects the fairness of the trial, may rise to the level of ineffective assistance of counsel (id.; Flores, 84 NY2d at 188-189).
A court should take care "to avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis" (Baldi, 54 NY2d at 146). If transcripts and submissions reveal a trial strategy that might well have been pursued by a reasonably competent attorney, then assistance is effective, even if trial counsel disavows the tactic (People v Satterfield, 66 NY2d 796, 799). Courts will not second guess whether defense counsel's trial strategy "was the best trial strategy, or even a good one, so long as defendant was afforded meaningful representation" (Satterfield, 66 NY2d at 799-800; Yarborough, — US —, 124 S Ct 1, 157 L Ed 2d 1). The choice of trial tactics is viewed objectively (People v Angelakos, 70 NY2d 670, 673-670; Satterfield, 66 NY2d at 799; People v Butler, 273 AD2d 613, 615; People v Castellano, 203 AD2d 116, 117). Trial strategies that might well have been pursued by a reasonably competent attorney and are objectively reasonable are within the constitutional parameters, even if trial counsel disavows or eschews the tactic and claims that such was not his or her tactic and would not have been his or her tactic (Satterfield, 66 NY2d at 799; People v Nichols, 289 AD2d 605, 606). A defendant must also "demonstrate the absence of strategic or [*8]other legitimate explanations for counsel's failure . . . Absent such a showing, it will be presumed that counsel acted in a competent manner and exercised professional judgment" (People v Rivera, 71 NY2d 705, 709).
In order to show that defendant's Federal constitutional right to effective assistance of counsel was violated the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors , the result of the proceeding would have been different" (Strickland, 466 US at 694, see also Benevento, 91 NY2d at 713). Reasonable probability means a probability that undermines the fact finder's confidence in the outcome of the trial (id.).
Under New York law prejudice is examined in terms of errors that deprive the defendant of a fair trial (Benevento, 91 NY2d at 713). Prejudice is "significant, but not dispositive"(People v Stuktz, — NY3d —, dcd, May 4, 2004, NYLJ May 5, 2004 at 19, 20 col 1).
Applying the above legal principles, the court finds that the defendant's ineffective assistance of counsel claim is beyond frivolous. Defendant received excellent representation and the record reflects that the defense team (the defendant had several attorneys working on his case) exceeded both State and Federal criteria.
The defense team was successful in precluding the People from introducing a composite sketch of the perpetrator, which looks identical to the defendant; was successful in precluding the People from introducing evidence that the sneakers worn by the perpetrator and a bag used in one of the attacks were of the kind given prisoners released from State prison; was successful in precluding the People from introducing the defendant's medical records showing that defendant is azoospermatic; was successful in precluding the prosecution from introducing evidence that the defendant had been previously convicted of a sex crime with the identical modus operandi as those being tried and a prior conviction in which the defendant was arrested because he had lost his wallet [FN8]; and was successful in convincing the People (after a lengthy hearing) not to call a jail house informant to whom the defendant made inculpatory statements. The defense team called an expert to show that the defendant's hair was not found on any of the victims, called an expert to dispute the prosecution's expert's statistics analysis and received permission to have another expert sit at counsel table during the People's expert's testimony. The defense vigorously cross-examined witnesses, consistently moved for a mistrial at every opportunity, was prepared with the law on every issue, investigated each complainant, and made strong opening and closing statements.
The defendant has failed to show that any actions of the defense team was unreasonable.
Further, in light of the overwhelming evidence of defendant's guilt, the defendant cannot establish the prejudice prong of the federal constitution (Campbell v United States, 364 F3d 727, 736; Spears v Mullin, 343 F3d 1215, 1249; see also People v Lussier, 298 AD2d 763, 764) or the fairness prong of the State constitution (People v Kennedy, — AD2d —, 2004 WL 964105; see People v Chicas, 293 AD2d 687, 687). 
The defendant also claims that the defense team should have obtained the defendant's [*9]discharge records from State prison which allegedly would have shown that he had a beard at the time of his release.
When a claim is made that counsel failed to make a particular motion or argument, defendant must show that the motion or argument would have been successful (People v Mance, 269 AD2d 188; People v Seymour, 255 AD2d 866, 867; People v Hernandez, 248 AD2d 149, 150; People v Ayala, 236 AD2d 802, 803).
The defendant has failed to show that had the prison records been obtained those records would have been admissible in evidence at his trial. Evidence of physical characteristics is relevant if it can be shown that the defendant possessed such characteristics at the time of the incident. The fact that defendant had a beard two days before the first attack does not show that the defendant did not shave before committing the first crime (see People v Scarola, 71 NY2d 769, 776-779).
Also, the record reflects that it was the defense counsel's successful strategy to preclude the People from informing the jury that the defendant had been released from prison two days before the crime and to preclude the jury from learning the defendant's criminal history. In order for defense counsel to introduce the prison records, it would have been necessary to inform the jury of the defendant's prior conviction, something defense counsel assiduously tried to prevent.
The defendant has failed to show that the records would have been admitted into evidence and the defendant has failed to disprove that the alleged deficiency was not part of a trial strategy.
The inadequacy of counsel claim lacks merit.
The court has not addressed each and every claim made by the defendant. The claims are procedurally barred as could have been placed on the record in the defendant's CPL 330.30 motion. The claims are without merit and are made solely upon incredible allegations of fact.[FN9]
The motion to vacate the judgment is denied for the reasons set forth above.
This constitutes the decision and order of the court.
The defendant is hereby advised of his right to apply to the Appellate Division, Second Department, 45 Monroe Place, Brooklyn, N.Y. 11201 for a certificate granting leave to appeal from this determination. This application must be made within 30 days of service of this decision. Upon proof of financial inability to retain counsel and to pay the costs and expenses of the appeal, the defendant may apply to the Appellate Division for the assignment of counsel and for leave to prosecute the appeal as a poor person and to dispense with printing. Application for poor person relief will be entertained only if and when permission to appeal or a certificate granting leave to appeal is granted (22 NYCRR 671.5).
E N T E R ,
 J. S. C.
Decision Date: May 21, 2004
Footnotes

Footnote 1: One of the victims was a sixteen year old whose description differed from the other victims.

Footnote 2: She stated she believed the shoe laces were hers because the tips of the shoe laces were removed.

Footnote 3: Azoospermia is a condition where a male discharges semen but is unable to issue sperm.

Footnote 4: It is noted that the defendant claims that the People were in possession of the defendant's prison record. At a hearing during trial and outside the presence of the jury, testimony was elicited that the defendant's prison records could not be located.

Footnote 5: The defendant did not testify at the hearing and the facts currently alleged were not brought to the court's attention and have no independent support.

Footnote 6: The court has not found any part of the trial record where the defense counsel introduced a photograph of the defendant's testicle. Whatever was introduced was by the People not defense. The photograph of the defendant's testicles was used by the defense counsel in cross examining the physician.

Footnote 7: The documents in any event are not Rosario material as they are not statements of a witness. The court has considered the allegation as a claim of late or failure to disclose Brady material. As for the prison records, as previously indicated, the hearing conducted by the court during trial indicates that at the time of trial the prison records were lost.

Footnote 8: The conviction was offered to prove motive for the arson in the last incident. The People argued that the defendant had previously been caught because of a lost wallet, and the lost wallet was the reason given by the perpetrator for the arson.

Footnote 9: The defendant's credibility is severely undermined by the fact that the trial record disprove many of his factual allegations. It is clear from this motion and defendant's prior motion that the defendant is in possession of the entire trial and sentencing minutes. Yet the defendant swears to facts that are contradicted by the minutes. The credibility of some of the claims is also shown by the outrageousness of the claim.